# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Hellweg v. Special Events Management*, 2011 IL App (1st) 103604

---

| | |
|---|---|
| Appellate Court Caption | BRIAN HELLWEG, Plaintiff-Appellant, v. SPECIAL EVENTS MANAGEMENT; CHICAGO SPECIAL EVENTS MANAGEMENT; HENRY RICHARD ZEMOLA, Individually and as an Agent and/or Employee of Special Events Management and Chicago Special Events Management; ANTHONY W. ABRUSCATO, Individually and as an Agent and/or Employee of Special Events Management and Chicago Special Events Management; STEVEN J. HANSEN, Individually and as an Agent and/or Employee of Special Events Management and Chicago Special Events Management; JOSHUA L. RUSTON, Individually and as an Agent and/or Employee of Special Events Management and Chicago Special Events Management; PETER G. VANDERHYE, Individually and as an Agent and/or Employee of Special Events Management and Chicago Special Events Management; THE VILLAGE OF ELK GROVE; CRAIG B. JOHNSON, individually and as an Agent and/or Employee of The Village of Elk Grove; ALEXIAN BROTHERS HOSPITAL NETWORK; and CLAUDINE QUEVEDO, as Mother and Next of Friend of GREG B. QUEVEDO, a Minor, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-3604 |
| Filed | July 8, 2011 |

**Held**

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

Plaintiff's action for the injuries he suffered while preparing for a bicycle race when he collided with a nonparticipant who was on the course was properly dismissed with prejudice on the basis of the release plaintiff executed, despite plaintiff's contentions that defendants failed to close the course for the training session as promised and that the release was unenforceable because the collision was not foreseeable, since bicycle racing on streets poses risks, even when the course is closed, the release did not have to enumerate all of the scenarios that could arise in which a rider might be injured, and the release plaintiff signed clearly assigned plaintiff the risk of a collision, regardless of the precise cause.

Decision Under Review

Appeal from the Circuit Court of Cook County, No. 10-L-1057; the Hon. James D. Egan, Judge, presiding.

Judgment

Affirmed.

Counsel on Appeal

Carolyn Daley Scott, of Power, Rogers & Smith, PC, of Chicago, for appellant.

Ronald G. Zamarin, of Law Offices of Ronald G. Zamarin, of Chicago, for appellees Village of Elk Grove and Craig B. Johnson.

Robert Marc Chemers, David M. Bennett, Sara Jane Brundage, and Richard M. Burgland, all of Pretzel & Stouffer, Chtrd., of Chicago, for other appellees.

Panel

JUSTICE EPSTEIN delivered the judgment of the court, with opinion.

Justices J. Gordon and Howse concurred in the judgment and opinion.


**OPINION**

¶ 1      Plaintiff, Brian Hellweg, appeals the involuntary dismissal of his negligence claims pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)). He maintains the trial court relied on an unenforceable release to dismiss his claims. We affirm.

¶ 2                          BACKGROUND

¶ 3 Plaintiff filed the instant lawsuit seeking to recover damages he sustained while preparing for a 2009 bicycling race organized by defendants Special Events Management, Henry Zemola, Anthony Abruscato, Steven Hansen, Joshua Ruston, Peter Vanderhye, Village of Elk Grove, Craig Johnson, and Alexian Brothers Hospital Network. The race was held on municipal streets advertised as a "closed course," an undefined term. Plaintiff was injured when he collided with a nonparticipating bicyclist, Greg B. Quevedo, a minor, while participating in a warm-up session organized by defendants. Plaintiff alleges they collided as a result of defendants' failure to close the course as promised prior to the session. Defendants moved to dismiss plaintiff's negligence claims with prejudice pursuant to section 2-619, arguing, *inter alia*, that plaintiff signed a "2009 USA Cycling Event Release Form" (the Release) exculpating them from liability. Plaintiff responded the Release was unenforceable because his collision with Quevedo was not foreseeable. The trial court disagreed, granting defendants' motions. Plaintiff appealed pursuant to Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)).

¶ 4                                        ANALYSIS

¶ 5 "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Section 2-619 allows the involuntarily dismissal of released claims. 735 ILCS 5/2-619(a)(9) (West 2008). We review such dismissals *de novo* and must determine "whether a genuine issue of material fact exists and whether the defendant is entitled to judgment as a matter of law." *Saichek v. Lupa*, 204 Ill. 2d 127, 134 (2003). We accept "as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from those facts," and we "interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008).

¶ 6 Parties in Illinois may generally contract away liability for their own negligence. *Garrison v. Combined Fitness Centre, Ltd.*, 201 Ill. App. 3d 581, 584 (1990). Such "agreements are not favored by the law and are strictly construed against the party they benefit." *Falkner v. Hinckley Parachute Center, Inc.*, 178 Ill. App. 3d 597, 603 (1989). However, they "must be given a fair and reasonable interpretation based upon a consideration of all of [the] language and provisions." *Id.*

> "[A]bsent fraud or wilful and wanton negligence, the contract will be valid and enforceable unless: (1) there is a substantial disparity in the bargaining position of the two parties; (2) to uphold the exculpatory clause would be violative of public policy; or (3) there is something in the social relationship between the two parties that would militate against upholding the clause. [Citations.] The rationale for this rule is that courts should not interfere with the right of two parties to contract with one another if they freely and knowingly enter into the agreement." *Garrison*, 201 Ill. App. 3d at 584.

Plaintiff here does not claim fraud, wilful and wanton negligence, a special relationship with defendants, substantial disparity in bargaining power, or a public policy violation. He argues only that the risk at issue was not foreseeable and thus not assumed by him.

"[A]n exculpatory clause, to be valid and enforceable, should contain clear, explicit, and unequivocal language referencing the types of activities, circumstances, or situations that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care. [Citation.] In this way the plaintiff will be put on notice of the range of dangers for which he assumes the risk of injury, enabling him to minimize the risks by exercising a greater degree of caution. [Citation.] The precise occurrence which results in injury need not have been contemplated by the parties at the time the contract was entered into. [Citation.] It should only appear that the injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff." *Id.* at 585.

"Foreseeability of a specific danger is thus an important element of the risk which a party assumes, and, for this reason, serves to define the scope of an exculpatory clause. This is but another way of stating that, although the type of negligent acts from which a person expressly agrees to excuse another need not be foreseen with absolute clarity, such acts cannot lie beyond the reasonable contemplation of the parties ***." *Larsen v. Vic Tanny International*, 130 Ill. App. 3d 574, 577 (1984).

"Whether a particular injury is one which ordinarily accompanies a certain activity and whether a plaintiff appreciates and assumes the risks associated with the activity often constitute a question of fact." *Simpson v. Byron Dragway, Inc.*, 210 Ill. App. 3d 639, 647 (1991). Here, plaintiff's release provides, in pertinent part:

"I ACKNOWLEDGE THAT BY SIGNING THIS DOCUMENT, I AM ASSUMING RISKS, AND AGREEING TO INDEMNIFY, NOT TO SUE AND RELEASE FROM LIABILITY THE ORGANIZERS OF THIS EVENT AND USA CYCLING, INC. (USAC), ITS ASSOCIATIONS *** AND THEIR RESPECTIVE AGENTS, EMPLOYEES, VOLUNTEERS, MEMBERS, CLUBS, SPONSORS, PROMOTERS AND AFFILIATES (COLLECTIVELY 'RELEASEES'), AND THAT I AM GIVING UP SUBSTANTIAL LEGAL RIGHTS. THIS RELEASE IS A CONTRACT WITH LEGAL AND BINDING CONSEQUENCES AND IT APPLIES TO ALL RACES AND ACTIVITIES ENTERED AT THE EVENT REGARDLESS WHETHER OR NOT LISTED ABOVE. I HAVE READ IT CAREFULLY BEFORE SIGNING, AND I UNDERSTAND WHAT IT MEANS AND WHAT I AM AGREEING TO BY SIGNING.

In consideration of the issuance of a license to me by one or more of Releasees or the acceptance of my application for entry in the above event, I hereby freely agree to and make the following contractual representations and agreements. I ACKNOWLEDGE THAT CYCLING IS AN INHERENTLY DANGEROUS SPORT AND FULLY REALIZE THE DANGERS OF PARTICIPATING IN THIS EVENT, whether as a rider, official, coach, mechanic, volunteer, or otherwise, and FULLY ASSUME THE RISKS ASSOCIATED WITH SUCH PARTICIPATION INCLUDING, by way of example, and not limitation: *** dangers of collision with pedestrians, vehicles, other riders, and fixed or moving objects; *** THE RELEASEES' OWN NEGLIGENCE, the negligence of others ***; and the

-4-

possibility of serious physical and/or mental trauma or injury, or death associated with the event. \*\*\* <u>I HEREBY WAIVE, RELEASE, DISCHARGE, HOLD HARMLESS, AND PROMISE TO INDEMNIFY AND NOT TO SUE</u> the Releasees and all sponsors, organizers, promoting organizations, property owners, law enforcement agencies, public entities, special districts and properties that are in any manner connected with this event, and their respective agents, officials, and employees through or by which the event will be held, (the foregoing are also collectively deemed to be Releasees), <u>FROM ANY AND ALL RIGHTS AND CLAIMS INCLUDING CLAIMS ARISING FROM THE RELEASEES' OWN NEGLIGENCE</u>, which I have or may hereafter accrue to me, and from any and all damages which may be sustained by me directly or indirectly in connection with, or arising out of, my participation in or association with the event, or travel to or return from the event. I agree it is my sole responsibility to be familiar with the event course and agenda, the Releasees' rules, and any special regulations for the event and agree to comply with all such rules and regulations. I understand and agree that situations may arise during the event which may be beyond the control of Releasees, and I must continually ride and otherwise participate so as to neither endanger myself nor others." (Emphasis in original.)

This agreement unambiguously absolves defendants of all claims arising out of the event even if caused by their own negligence. Plaintiff maintains the Release is nevertheless unenforceable because the presence of a nonparticipant bicyclist on the course is not a risk ordinarily attendant to closed course races. According to plaintiff:

"When a cycling race is advertised as closed course, it means that all intersections and streets are closed and barricaded to ensure that no one, other than those participating and involved in the race, are permitted onto the course. This enables the cyclists to ride along the streets and through the intersections on the course without having to worry that there will be another vehicle or non-participating cyclist crossing through the intersection."

The presence of nonparticipants in bicycle races conducted on municipal streets is an inherent and reasonably foreseeable risk. Even assuming, *arguendo*, that such risk is absent in closed course races, a matter of dispute, plaintiff nevertheless assumed that allegedly extraordinary risk here by expressly agreeing to absolve defendants of liability for "collision with pedestrians, vehicles, other riders, and fixed or moving objects." Closed course or not, plaintiff's release plainly contemplates the possibility of pedestrians, vehicles, other riders, and/or fixed or moving objects on the course. The Release encompasses plaintiff's collision.

¶ 7    Plaintiff disagrees, arguing that "the language 'other riders or moving or fixed objects' does not reasonably encompass a minor who was able to ride his bicycle onto the course due to the Defendants failing to properly close the streets." According to plaintiff, he "did not nor could he have foreseen that Defendants would negligently fail to close the course," and "there is no possible way that he could have contemplated that the Defendants intended that the release encompass their negligent conduct in failing to close the course." We disagree. The Release unambiguously states plaintiff is relinquishing "<u>ANY AND ALL \*\*\* CLAIMS ARISING FROM THE [DEFENDANT'S] OWN NEGLIGENCE</u>." (Emphasis in original.)

Moreover, the relevant inquiry for purposes of enforcing the Release is not whether plaintiff foresaw defendants' exact act of negligence or his exact collision. It is whether plaintiff knew or should have known colliding with a nonparticipant on the course was a risk encompassed by his release. As our supreme court explained in the context of automobile racing:

> "[A] myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents. *** The parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable. In adopting the broad language employed in the agreement, it seems reasonable to conclude that the parties contemplated the similarly broad range of accidents which occur in auto racing." *Schlessman v. Henson*, 83 Ill. 2d 82, 86 (1980).

Similarly, bicycle racing on municipal streets undoubtably poses risk of injury to the public, riders, and race personnel, even when the course is closed. Various scenarios could arise in which a rider is injured, including, as in this case, collision with a nonparticipant. All such scenarios need not be enumerated in the release. It is sufficient if the language used therein is broad enough to reasonably demonstrate the parties contemplated the risk at issue. The release here plainly assigns plaintiff the risk of collision on the course, including, *but not limited to*, "collision with pedestrians, vehicles, other riders, and fixed or moving objects." This includes plaintiff's collision with Quevedo. Even if it did not, the Release was manifestly "designed to encompass all claims against defendant[s] based on [their] negligence, even though the precise cause of the accident may have been extraordinary." *Id.* at 86. We affirm the dismissal of plaintiff's claims with prejudice. The trial court properly concluded as a matter of law that plaintiff's negligence claims are barred by the Release.

¶ 8                                         CONCLUSION

¶ 9        We affirm the dismissal of plaintiff's claims with prejudice. The Release is enforceable.

¶ 10       Affirmed.