# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Johnson v. Salvation Army*, 2011 IL App (1st) 103323

---

| | |
|---|---|
| Appellate Court Caption | ANDRE JOHNSON, Plaintiff-Appellant, v. THE SALVATION ARMY, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-3323 |
| Filed | August 12, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The exculpatory clause in the admittance statement plaintiff signed upon entering defendant's drug and alcohol rehabilitation program relieved defendant of liability for the injuries plaintiff suffered in a single-car accident while a passenger in one of defendant's vehicles. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00-CR-10872; the Hon. Jennifer Duncan-Brice, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
  Appeal

Randall W. Schwartz, of Schwartz Law Firm, of Chicago, for appellant.

James W. Ford and Meghan A. Gonnissen, both of Brenner, Ford, Monroe & Scott, Ltd., of Chicago, for appellee.


Panel

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.

Justices J. Gordon and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Andre Johnson appeals from an order of the circuit court granting summary judgment against him and in favor of defendant the Salvation Army.[1] Plaintiff was injured in a single-car crash while a passenger in a Salvation Army-owned vehicle being driven by a Salvation Army employee. Plaintiff filed this action against defendant alleging that its employee, Dennis Rushing, negligently drove a truck causing plaintiff's injuries. Defendant filed an affirmative defense alleging that plaintiff's claims are barred because he signed an exculpatory agreement, contained in a beneficiary's admittance statement, when he entered the Salvation Army's adult rehabilitation program, agreeing to hold defendant free and harmless from any and all liability if he were injured while a beneficiary of the Salvation Army's drug and alcohol rehabilitation program. The parties filed cross-motions for summary judgment on defendant's affirmative defense. The circuit court granted summary judgment in favor of defendant and against plaintiff. For the following reasons, we affirm.

¶ 2     I. BACKGROUND

¶ 3     The record reveals the following pertinent facts and procedural history. In August 2007, Johnson sought treatment from the Salvation Army adult rehabilitation program in Chicago and was enrolled as a beneficiary in the drug and alcohol rehabilitation program at the time of the injury. The rehabilitation program is run by the Salvation Army, a religious and charitable organization that provides social services to the disadvantaged, including drug and alcohol rehabilitation. The rehabilitation center (Center) is "dedicated solely to the social and physical rehabilitation and the spiritual regeneration of those persons who are in need of such assistance." The program lasts 12 months and is designed to "move an individual from dependency on drug and alcohol use to a point at which he can hold gainful employment on the outside." There are three components to the program: drug/alcohol education, spiritual

---

[1]Plaintiff initially brought suit against both the Salvation Army and Dennis M. Rushing. Plaintiff voluntarily dismissed Rushing from the action on September 29, 2010.

-2-

development, and work therapy. The work therapy portion of the program consists of a 40-hour-per-week work therapy assignment.

¶ 4    To become a beneficiary of the program, an individual must complete an application and intake process during which a Salvation Army employee meets with the beneficiary. Once accepted into the program, the beneficiary lives at the Salvation Army Center located at 506 North Des Plaines Street, and is assigned certain job responsibilities which equate to a 40-hour work week. The beneficiaries are assigned a room to live in, fed three meals per day, and given a $7-per-week "gratuity" for the purchase of discretionary items.

¶ 5    Plaintiff applied to the rehabilitation program at 506 North Des Plaines Street in August 2007. He had previously participated in the same program at the adult rehabilitation center located at 2358 North Clybourn in Chicago. He chose to apply to the program at North Des Plaines in 2007 instead of the program at North Clybourn because he heard that the North Des Plaines program was larger and had more opportunities.

¶ 6    Plaintiff voluntarily reentered defendant's program in 2007 because he "wanted the miracle." According to his deposition, he was "healed" when he participated in the program on North Clybourn in 2004, and he "wanted the miracle" again. Plaintiff has participated in other rehabilitation programs, including those offered through the Department of Veterans Affairs (hereafter VA).

¶ 7    Robert St. Julien completed the intake process for plaintiff and admitted plaintiff into the rehabilitation program in 2007. As part of the intake process, St. Julien read the beneficiary's admittance statement out loud to plaintiff prior to plaintiff signing the form in St. Julien's presence. The beneficiary's admittance statement in question reads as follows:

"THE SALVATION ARMY ADULT REHABILITATION

CENTER

BENEFICIARY'S ADMITTANCE STATEMENT

I recognize my need for assistance and hereby apply for admission to the Adult Rehabilitation Center. I understand that The Salvation Army is a religious and charitable organization and that this Adult Rehabilitation Center is dedicated solely to the social and physical rehabilitation and the spiritual regeneration of those persons who are in need of such assistance.

I further understand that under no circumstances can this Center be under any obligation to me; and that I am a beneficiary and not an employee of this Center.

I understand that my admission and continued residence is dependent upon my needing such assistance and my willingness to help myself and others so situated, including the vountary [*sic*] performance of such duties as may be assigned to me.

I agree for myself, my heirs or assigns, that should any accident occur involving personal injury to myself or loss or damage to my properly [*sic*] during my residence in this Center, to hold The Salvation Army free and harmless from any and all liability in connection therewith.

Any personal property left upon my departure from this Center and not claimed within thirty days by me or by my authorized representative shall become the

-3-

property of The Salvation Army to dispose of to the best interests of the Center.

I further agree to attend religious services in the chapel regularly as arranged by the Administrator.

I agree not to enter or remain in this building under the influence of intoxicants or enter the building with such in my possession."

The statement was signed and dated by plaintiff and a witness.

¶ 8 Plaintiff also signed a "Room & Board Agreement," which reads:

"I understand that The Salvation Army is a religious, charitable and non-profit organization and that this Adult Rehabilitation Center is dedicated solely to the social and physical rehabilitation and the spiritual regeneration of those persons who are in need of such assistance.

I understand that while ability to pay for service is not a criterion for admission to the Adult Rehabilitation Center program, beneficiaries admitted to the Center for rehabilitation shall be required to pay room and board when receiving outside income such as social security, state and local welfare, military or other disability benefits.

I understand that the room and board fee shall be established at 75% of the outside income, but shall not exceed the cost of room and board as determined annually by an approved formula. Room and board is payable monthly, due by the 5th of each month.

The established amount of room and board as of today's date is $75 [handwritten amount] per week.

Since the room and board fee covers cost only and not the 'value' of comparable room and board if purchased at restaurant and lodging house rates, I am aware that this fee does not cover the cost of the program and, therefore, does not in any way diminish my required participation in the Center program.

I understand I must abide by all rules of the house and that by paying room and board I do not have additional privileges. I must remain alcohol-free and drug-free. If I break any of the above mentioned rules I could be asked to leave."

This form was signed and dated by plaintiff and a witness.

¶ 9 While participating in the rehabilitation program at 506 North Des Plaines, plaintiff participated in work therapy, drug and alcohol meetings, and counseling sessions.

¶ 10 At the time of plaintiff's injury, plaintiff was a resident of the Center and was "performing work as a beneficiary of the Salvation Army" as part of the work therapy program. As such, plaintiff was accompanying employee Rushing as an assistant in picking up and delivering donations to the Salvation Army. While a passenger in the Salvation Army-owned vehicle being driven by Salvation Army employee Rushing, the passenger door opened and plaintiff fell out of the vehicle. Plaintiff sustained injuries to his arm which required medical treatment.

¶ 11 Plaintiff filed a complaint against Rushing and the Salvation Army, alleging that, while performing his work therapy assignment, he was injured as a proximate result of Rushing's negligence in operating the vehicle.

-4-

¶ 12 Defendant and Rushing filed their first affirmative defense, alleging that plaintiff was a beneficiary in the Salvation Army's drug and alcohol rehabilitation program, that plaintiff agreed to perform work therapy as a part of his voluntary participation in the rehabilitation program, and that upon entering the program, plaintiff agreed via the exculpatory statement to hold defendants free from any and all liability for any injuries sustained as a result of his participation in the program. Defendants plead that plaintiff was not an employee of the Salvation Army.

¶ 13 Plaintiff and defendants filed cross-motions for summary judgment on the issue of whether the exculpatory statement signed by plaintiff acts as a waiver of defendants' liability for allegedly injuring plaintiff in the automobile accident. Plaintiff voluntarily dismissed Rushing as a defendant prior to the circuit court's ruling on the parties' cross-motions for summary judgment. Defendant argued that the exculpatory clause is a complete bar to plaintiff's claim, while plaintiff maintains that the waiver is unenforceable because it not only violated public policy, but the accident at issue was not covered by the exculpatory language of the agreement.

¶ 14 The circuit court granted defendants' motion for summary judgment and denied plaintiff's motion for summary judgment on the affirmative defense, finding that the exculpatory clause in the beneficiary's admittance statement was a complete bar to plaintiff's claims. Plaintiff appeals.

¶ 15                                   II. ANALYSIS
¶ 16                   1. The Exculpatory Clause Was Not Against Public Policy
¶ 17 On appeal, plaintiff first contends that the trial court erred in granting summary judgment against him where there are genuine issues of material fact present in this case. Specifically, plaintiff argues that the exculpatory clause was against public policy and should not have been enforced against him because: (1) his relationship with defendant was "akin" to an employee/employer relationship; and (2) the disparity in bargaining power between plaintiff and defendant rendered the exculpatory clause unenforceable. We disagree.

¶ 18 Summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001). This relief is an appropriate tool to employ in the expeditious disposition of a lawsuit in which " 'the right of the moving party is clear and free from doubt.' " *Morris*, 197 Ill. 2d at 35 (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)). We review a trial court's grant of summary judgment *de novo* (*Morris*, 197 Ill. 2d at 35), and we will only disturb the decision of the trial court where we find that a genuine issue of material fact exists (*Addison v. Whittenberg*, 124 Ill. 2d 287, 294 (1988)).

¶ 19 "An exculpatory agreement constitutes an express assumption of risk wherein one party consents to relieve another party of a particular obligation." *Platt v. Gateway International Motorsports Corp.*, 351 Ill. App. 3d 326, 330 (2004). Generally, exculpatory agreements are enforceable unless: (1) it would be against the settled public policy of the state to do so; or (2) there is something in the social relationship of the parties which militates against

upholding the agreement. *Harris v. Walker*, 119 Ill. 2d 542, 548 (1988). Exculpatory agreements are contrary to public policy if they are: (1) between an employer and employee; (2) between the public and those charged with a duty of public service, such as a common carrier or a public utility; or (3) between parties where there is a disparity of bargaining power so that the agreement does not represent a free choice on the part of the plaintiff, such as a monopoly. *White v. Village of Homewood*, 256 Ill. App. 3d 354, 358-59 (1993). An agreement in the nature of a release or exculpatory clause is a contract, and the legal effect is to be decided by the court as a matter of law. *Hamer v. Segway Tours of Chicago, LLC*, 402 Ill. App. 3d 42, 44 (2010).

¶ 20 Initially, plaintiff argues that his relationship with defendant is "akin" to an employment relationship. Specifically, plaintiff argues that he was working in exchange for the "necessities of life" and that upholding the exculpatory agreement here would allow defendant to "employ" workers without giving them the protection of workers' compensation. We disagree.

¶ 21 The relationship between plaintiff and defendant was that of a beneficiary and charitable organization. Plaintiff was a resident and beneficiary of the rehabilitation center at the time of injury. As such, plaintiff was required to participate in defendant's established rehabilitation program. Plaintiff testified at his deposition that, as part of the rehabilitation program, he was required to make his bed, keep his area clean, attend drug and alcohol meetings at the Center, and participate in work therapy. While performing work therapy, plaintiff received training in skills necessary to secure employment upon leaving the program. The work therapy and skills training were necessary for plaintiff, who had not held a job in over 30 years.

¶ 22 Moreover, the beneficiary's admittance statement, which plaintiff signed, sets forth the conditions under which the beneficiary enters the rehabilitation program, including: "I am a beneficiary and not an employee of this Center." Also, the work therapy statement plaintiff signed sets forth that "work therapy is to be considered an essential part of [the beneficiary's] rehabilitation." The work therapy program is not employment and beneficiaries are not paid for their work. Plaintiff voluntarily entered into the rehabilitation program, had a meeting during which Salvation Army counselor St. Julien read the beneficiary's admittance statement out loud to plaintiff, and plaintiff ultimately signed the admittance statement acknowledging that the beneficiary relationship was not an employment relationship. We are not now persuaded by plaintiff's argument that he was, in fact, an employee of the Salvation Army.

¶ 23 While the parties have not directed us to and we have not found Illinois case law in this area, we note that a United States District Court has considered a related issue. While we are not bound by the determinations of that court, we do find its reasoning instructive. In *Williams v. Strickland*, 837 F. Supp. 1049 (N.D. Cal. 1993), the district court was tasked with determining, for purposes of summary judgment, whether a beneficiary participating in the Salvation Army's rehabilitation program who performed work therapy tasks was an employee of the Salvation Army under the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 3(d) (1988)). *Williams*, 837 F. Supp. at 1051. The court granted summary judgment in favor of the Salvation Army, finding that, although he performed work therapy tasks, the

beneficiary was not an employee of the Salvation Army for purposes of FLSA, where: he signed a statement when he entered the program agreeing that beneficiaries were not employees; he did not fill out any employment-related forms; the work therapy element of the program was designed to "help those in the program overcome their addictions and become productive," and the beneficiary had indicated his need to solve his drinking problem; he was not a commercial beneficiary of the Salvation Army's services; work therapy was intended to give participants a sense of worth, responsibility and accomplishment; and the work therapy was not used as a source of cheap labor by the Salvation Army. *Williams*, 837 F. Supp. at 1052-54. The court concluded:

> "In view of the economic realities and the totality of the circumstances, the basic relationship between the Salvation Army and plaintiff was not one of employment but was one of rehabilitation. The work element of the rehabilitation program was to give the beneficiaries a sense of worth, responsibility and accomplishment, and was not used as a source of cheap labor for defendant." *Williams*, 837 F. Supp. at 1053-54.

As in *Williams*, plaintiff here was not an employee of the Salvation Army.

¶ 24 Nor do we find that there existed such a disparity in bargaining positions between plaintiff and defendant that the agreement did not represent plaintiff's free choice. See *White*, 256 Ill. App. 3d at 358-59. Plaintiff contends that he and other beneficiaries of the program, as unemployed, homeless, and substance-abusive applicants, had no free choice or reasonable alternative in bargaining with defendant over the conditions of enrollment in the program. Plaintiff argues that he had no free choice because, "[e]ssentially, the applicant must accept the terms of the Salvation Army, including the exculpatory agreement, or be denied food and shelter. If an applicant rejects the 'agreement,' he is returned to the homeless and foodless environment from which he came." Plaintiff's argument fails where: (1) the food and shelter offered by defendant were merely incident to the rehabilitation program; and (2) defendant could have sought rehabilitation services elsewhere.

¶ 25 First, defendant did not offer plaintiff food and shelter, or "the necessities of life." Rather, these benefits were merely incident to the rehabilitation program. Defendant does not offer room and board to individuals, but offers its beneficiaries an opportunity to participate in the rehabilitation program. In signing the agreements and being accepted into the program, plaintiff agreed to participate in the rehabilitation program, which happened to include room and board.

¶ 26 Second, the record disputes plaintiff's assertion that he had no choice but to enter into defendant's rehabilitation program. Plaintiff testified that he entered defendant's rehabilitation program because defendant had previously helped him deal with his addictions in 2004 and he wanted another "miracle." Plaintiff sought treatment for drug and alcohol addiction, not food and shelter. Plaintiff also testified that he has received rehabilitation services at the other addiction centers, including the Haymarket House and various VA facilities. He lived in-residence at many of these facilities. In fact, after the injury at issue here, plaintiff left defendant's facility and lived in the Franciscan House. Plaintiff testified that, although he was homeless after leaving the Salvation Army in 2007, he "was connected.

I was hooked up with the social worker in the VA ***. She hooked me up with the pre-bid program that's in the VA and with the shelter, Franciscan." He then stayed at the Franciscan shelter and completed a rehabilitation program. Plaintiff also testified that, when he previously completed defendant's program, he was drug-free and lived with his mother and brother. Plaintiff testified that defendant's rehabilitation program he completed in 2004 was the first drug and alcohol program he had been involved with. He testified that he did not know if he could have entered into any other drug and alcohol rehabilitation programs other than defendant's program in 2007 because he had never tried to do so. Despite the alternatives available to him, plaintiff voluntarily chose to enter defendant's rehabilitation program in August 2007. Plaintiff admitted at deposition that he could have left the program at anytime he chose to do so. He also could have refused to participate in the rehabilitation program, as the program is entirely voluntary and beneficiaries remain in the program only as long as they choose to do so.

¶ 27 Plaintiff, however, decided to enter into and remain in the program, knowing that he had to meet certain program requirements including participation in work therapy, and with the knowledge that he signed a waiver of liability. The beneficiary's admittance statement signed by plaintiff explains the conditions under which the beneficiary enters the rehabilitation program. In order to be admitted and to remain in the program, plaintiff must need assistance, be willing to help himself and others, voluntarily perform any duties assigned him, attend religious services, remain sober, and refrain from bringing intoxicants into the center. In addition, plaintiff agreed by signing the beneficiary's admittance statement that, "should any accident occur involving personal injury to myself or loss or damage to my property during my residence in this Center, [he would] hold The Salvation Army free and harmless from any and all liability in connection therewith."

¶ 28 This agreement represents plaintiff's free choice, where plaintiff was aware of and agreed to all of the program requirements, including the exclusionary clause. Plaintiff was not required to enter into the program but, rather, could have chosen not to agree to the terms of the program and not to enter into the program. Instead, plaintiff voluntarily agreed to the requirements and became a beneficiary of the program.

¶ 29 Plaintiff urges us to find that *White v. Village of Homewood*, 256 Ill. App. 3d 354, where a different division of this court found that economic compulsion facing those in search of employment can represent a disparity of bargaining power between a job applicant and a potential employer, is dispositive here. *White*, however, is inapposite to the case at bar. In *White*, the plaintiff participated in a physical agility test as part of her application to become a firefighter/paramedic for the village. *White*, 256 Ill. App. 3d at 355. The plaintiff was injured during the physical agility test and brought a negligence action against the village, notwithstanding an exculpatory agreement she had signed. *White*, 256 Ill. App. 3d at 356. The defendant was required by law to administer the physical agility test and the plaintiff had a legal right to participate. *White*, 256 Ill. App. 3d at 357. The plaintiff claimed that the exculpatory clause was unenforceable because it lacked consideration and violated public policy. *White*, 256 Ill. App. 3d at 356. A different division of this court agreed, stating that although exculpatory clauses may act as a total bar to a plaintiff's negligence claim, a release must be based upon consideration. *White*, 256 Ill. App. 3d at 357-58. Since the defendants

were required by law to administer the physical agility test, there was no consideration between the parties and the exculpatory agreement was therefore unenforceable as a matter of law. *White*, 256 Ill. App. 3d at 357. The *White* court also found the exculpatory agreement contrary to public policy:

> "Exculpatory agreements that are contrary to public policy include those (1) between an employer and an employee; (2) between the public and those charged with a duty of public service, such as involving a common carrier, an innkeeper, a public warehouseman or a public utility; and (3) between parties where there is such a disparity of bargaining power that the agreement does not represent a free choice on the part of the plaintiff, such as a monopoly or involving a plaintiff without a reasonable alternative." *White*, 256 Ill. App. 3d at 358-59.

¶ 30    The *White* court found a disparity of bargaining power because the plaintiff was required to sign the exculpatory agreement in order to complete her job application for the position of firefighter/paramedic. *White*, 256 Ill. App. 3d at 359. The *White* court was not persuaded by the defendants' assertion that they did not have a monopoly on the job market and that the plaintiff could apply for work elsewhere, and instead reasoned that the plaintiff really had no bargaining power due to the economic compulsion facing those in search of employment. *White*, 256 Ill. App. 3d at 359. The court also found that the exculpatory agreement was against public policy because the relationship between the defendants and the plaintiff, as potential employer and job applicant, was similar to the relationship between an employer and an employee. *White*, 256 Ill. App. 3d at 359.

¶ 31    *White* does not persuade us differently. First, plaintiff in the case at bar does not make an argument regarding consideration, which was the backbone of the *White* decision. Moreover, plaintiff was not under the same economic compulsion as the plaintiff in *White*. Rather, plaintiff here could have sought rehabilitation services at another facility, including at a VA facility. Having previously completed a rehabilitation program, plaintiff was familiar with the landscape of rehabilitation services available in the area, and in fact had spent the days prior to entering defendant's program in a rehabilitation program offered at another facility, Haymarket. Had plaintiff chosen not to become a beneficiary in defendant's program, plaintiff could have found other alternatives for treatment, food and shelter.

¶ 32    Moreover, plaintiff entered defendant's rehabilitation program with the expectation that he would receive assistance with his drug and alcohol addictions. In *White*, the disparity was found between an individual who needed employment and an entity that could provide her with employment, an essential economic necessity. First, as discussed above, the case at bar does not concern an application for employment. Second, defendant offered plaintiff rehabilitation services and not food and shelter, the alleged necessities for which plaintiff argues he was under an economic compulsion to acquire. The record does not support plaintiff's contention that there was a disparity of bargaining power between himself and defendant. The circuit court did not err in its grant of summary judgment where there was no issue of material fact.

¶ 33                    2. The Exculpatory Clause Applied to the Instant Injury

-9-

¶ 34    Next, plaintiff contends that the circuit court erred in granting summary judgment because the exculpatory agreement does not apply to the underlying incident. Specifically, plaintiff argues that the exculpatory clause was ambiguous and does not contain the unequivocal language necessary for an effective exculpatory agreement. We disagree.

¶ 35    "The primary goal of contract interpretation is to give effect to the parties' intent by interpreting the contract as a whole and applying the plain and ordinary meaning to unambiguous terms." *Joyce v. DLA Piper Rudnick Gray Cary LLP*, 382 Ill. App. 3d 632, 636-37 (2008). "A contract is not rendered ambiguous merely because the parties do not agree on its meaning." *Platt*, 351 Ill. App. 3d at 330. "If the contract terms are unambiguous, the parties' intent must be ascertained exclusively from the express language of the contract, as a matter of law." *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888 (1995).

¶ 36    An exculpatory agreement is an express assumption of risk. *Platt*, 351 Ill. App. 3d at 330. In order to effectively assume the risk of some occurrence, it must be demonstrated that the danger which caused the injury was one which ordinarily accompanied the activity and that the plaintiff knew, or should have known, that both the danger and the possibility of injury existed before the occurrence. Thus, foreseeability of a specific danger is an important element of the risk which a party assumes and will often serve to define the scope of an exculpatory agreement. However, " '[t]he parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable.' " *Harris,* 119 Ill. 2d at 549 (quoting *Schlessman v. Henson*, 83 Ill. 2d 82, 86 (1980)). This court has noted:

> "An exculpatory agreement must contain clear, explicit, and unequivocal language referencing the type of activity, circumstance, or situation that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care. [Citation.] However, the parties need not have contemplated the precise occurrence which results in injury. [Citation.] The injury must only fall within the scope of possible dangers ordinarily accompanying the activity and, therefore, reasonably contemplated by the parties." *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 414-15 (2007).

¶ 37    Here, the terms of the beneficiary's admittance statement, including the exclusionary clause, are clear and unambiguous. The statement sets forth that the beneficiary agrees to participate in the rehabilitation program, including performing work therapy, attending religious services, and refraining from using or bringing intoxicants into the building. The beneficiary knows that he will be given work therapy assignments and that he cannot hold defendant liable for any injuries sustained while participating in work therapy. The statement contains a waiver of liability for any personal injuries the plaintiff may incur while in the rehabilitation program:

> "I agree for myself, my heirs or assigns, that should any accident occur involving a personal injury to myself of loss or damage to my property during my residence in this Center, to hold The Salvation Army free and harmless from any and all liability in connection herewith."

The statement applies to plaintiff's participation in the program, as a whole, including any

work therapy he may perform. The exclusionary clause likewise pertains to the beneficiary's participation in all components of the program, including work therapy.

¶ 38    Plaintiff argues that the exculpatory clause applies only to injuries physically occurring at the Center located at 506 North Des Plaines Street, but this contention is not a reasonable reading of the unambiguous exculpatory clause. The clause clearly states that the plaintiff agrees to hold defendant free and harmless from any and all liability in connection with any personal injuries that occur while he is a beneficiary in the adult rehabilitation program. There is no limitation as to the physical or geographical location at which plaintiff may be injured. At the time of his injury, plaintiff was a beneficiary in defendant's rehabilitation program. As part of the program, he participated in work therapy and attended drug and alcohol meetings, among other responsibilities. On the day he was injured, plaintiff was working as an assistant, picking up and delivering donations for defendant. When injured, plaintiff was involved in the work therapy component of the program. Although plaintiff may not have contemplated the precise injury or circumstance which caused his injury, plaintiff could reasonably have contemplated that he might be injured while completing his work therapy assignment. See *Harris*, 119 Ill. 2d at 549. Therefore, under the statement, defendant cannot be held liable for injuries suffered.

¶ 39    Because we find the exclusionary clause at issue to be unambiguous, we need not consider extrinsic evidence in order to ascertain the parties' intent. See *Meyer*, 273 Ill. App. 3d at 888.

¶ 40    The trial court did not err in granting summary judgment where no genuine issue of material fact exists.

¶ 41                                    III. CONCLUSION

¶ 42    For all of the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 43    Affirmed.