2025 IL App (4th) 240956-U

NO. 4-24-0956

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
September 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| DOMINIQUE BARAHONA, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Rock Island County |
| SNOWSTAR CORPORATION, d/b/a Snowstar Winter | ) | No. 22LA110 |
| Sports Park, | ) | |
|     Defendant-Appellee. | ) | Honorable |
| | ) | Richard A. Zimmer, |
| | ) | Judge Presiding. |

---

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's grant of summary judgment to defendant where the exculpatory agreement between the parties clearly encompassed plaintiff's injury and barred his negligence claims.

¶ 2    Plaintiff, Dominique Barahona, sued defendant, Snowstar Corporation, d/b/a Snowstar Winter Sports Park (Snowstar), for an injury he sustained while skiing on defendant's property. The trial court granted defendant's motion for summary judgment, finding that an exculpatory agreement between the parties released defendant from liability for plaintiff's ski-related injuries. On appeal, plaintiff argues the court erred in granting summary judgment to defendant because there was a genuine issue of material fact as to whether the exculpatory agreement sufficiently put plaintiff on notice of the risk he was assuming and whether his injury was reasonably foreseeable to plaintiff. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4         On November 23, 2022, plaintiff filed a complaint against defendant in the circuit court of Rock Island County, alleging that he was injured while downhill skiing at defendant's property when he ran into a snowmaking machine. Plaintiff further alleged that defendant was negligent in that defendant (1) should have known the snowmaking machine was placed in an unsafe location and that invitees would fail to see and appreciate the danger, (2) failed to follow industry standards in placing the snowmaking machine, (3) failed to warn invitees of the snowmaking machine's placement and the danger it posed, (4) failed to provide adequate safeguards to prevent plaintiff's injury, and (5) was otherwise careless and negligent.

¶ 5         Defendant filed an answer to plaintiff's complaint on January 5, 2023. Defendant admitted that it owned the property but denied the remainder of plaintiff's allegations.

¶ 6                                 A. Plaintiff's Deposition

¶ 7         Plaintiff was deposed on July 14, 2023. He testified that on February 20, 2021, he was a college student who went skiing at defendant's property with three of his friends. It was his first time ever skiing or snowboarding. He initially planned to snowboard, but by the time he reached the end of the line at the rental facility, they had run out of snowboarding shoes and recommended he rent skis instead. He did not seek out an initial ski lesson before beginning to ski. He did not rent a helmet.

¶ 8         Plaintiff testified that he was on his fourth ski run when the injury occurred. His three friends stayed at the top of the hill at the ski lodge. He stated that he did not remember the name of this particular hill, but it was "the first hill out of the lodge," so he assumed "it would be kind of easy to guess that it would be a beginner hill." An incident report form prepared by defendant on the day of the accident described the location as the "Big Dipper" ski run. Plaintiff

stated that he "saw little kids going down pretty smoothly so [he] didn't really think anything of it." As he was going down the slope, he saw a "little kid" in his peripheral vision going down the slope diagonally. Plaintiff believed that if he kept going straight, he would run into the child, so he began to angle himself. At that point, he stated that he "ended up getting turned around" and tried to slow himself down with his ski poles, but he "knew that [he] wasn't going to be able to get [him]self under control." He "couldn't see anything that would have stopped [him]," but he "kept looking up the hill, trying to kind of crawl [his] way up." He then "slammed into the snowmaking machine" and lost consciousness. He explained that the snowmaking machine was off to the side of the hill, "very, very close to where skiers were still going down," and "[t]here was nothing that would make it noticeable."

¶ 9        Plaintiff described his resulting injury as "a very deep laceration with searing pain from [his] midback all the way down." His coccyx was fractured, and he developed degeneration in his lumbar spine, scoliosis, right hip femur impingement, and gastritis. He underwent surgery for a diverting loop ileostomy, which was reversed four months later. He testified that the laceration did not fully heal until January 2022.

¶ 10        Plaintiff testified that he signed a liability waiver prior to renting the ski equipment on February 20, 2021. He checked the box on the waiver consenting to use an electronic signature. The electronic signature read, "Dom," but plaintiff testified that he did not remember signing it because he "do[es]n't ever sign [his] name Dom." He confirmed that he reviewed the document prior to checking the electronic signature box. He acknowledged that there were risks related to skiing, that he did not take any skiing lessons prior to February 20, 2021, and that he did not rent a helmet. He confirmed that his electronic signature "was intended to be a complete and unconditional release of liability."

¶ 11                    B. Michael Benhart's Deposition

¶ 12        Michael Benhart had been a ski patroller at Snowstar for 31 years. He testified that snowmaking machines were already at the park when he joined the ski patrol in 1992. He explained that both fixed and mobile snowmaking machines were used at the park, with the mobile machines moving as needed. He stated that the run called "Big Dipper," directly in front of the lodge, was a "blue run," indicating it was for intermediate skiers. Benhart was the first to arrive at the scene of plaintiff's accident. He discussed plaintiff's injury, the location of the accident, and his treatment of plaintiff. During Benhart's deposition, plaintiff's counsel referenced a photograph, which is not in the record on appeal and apparently depicted orange tape surrounding either the snowmaking machine or a nearby tree. Benhart also testified that he believed the snowmaking machine was placed safely.

¶ 13                    C. The Exculpatory Agreement

¶ 14        On February 20, 2021, before renting ski equipment, plaintiff signed a document titled "Assumption of Risk, Waiver of Liability, and Indemnification Agreement." In various provisions of the agreement, the risks involved in skiing and their possible consequences were set forth:

> • "[Snowstar] want[s] you to understand that sports, like any recreational activities, includes [*sic*] inherent risks that can never be eliminated regardless of how much emphasis is placed on safety."
>
> • "Inherent Risks: SNOWSTAR feels it is important that you realize Snowstar is a venue and a recreational facility where a certain level of athleticism is required and where everyone on our property *** may encounter risks which may include but are not limited to: collisions with others (whether participants or not) or with objects

(whether marked or unmarked and whether padded or unpadded) such as trees, rocks, stumps, forest growth, debris, natural obstacles, terrain features, guy wires, lift towers, poles, fences, signs, snowmaking equipment, and vehicles. Falls, awkward landings and collisions are also inherent from variations in snow/ice conditions such as bare spots, black ice, moguls, surface variations, slope design and weather conditions."

• "You have a personal responsibility to be in control at all times."

• "These risks can be greatly reduced by: taking lessons, abiding by 'Your Responsibility Code' and renting or using a helmet."

• "It is important that all participants \*\*\* understand that injuries can occur as the result of these inherent risks, which include but are not limited to, muscle strains and sprains, bruises, contusions, abrasions, sunburn, muscle soreness, broken bones, ligament and joint injuries, back and neck injuries, concussions, internal injuries, eye injuries, brain or spinal cord injuries, heart attack, stroke, and even death."

¶ 15      The agreement then included the following provision, repeated three other times using similar language, about waiving defendant's liability.

"I understand that the sports [*sic*] of skiing involve [*sic*] inherent and other risks of INJURY and DEATH. I voluntarily agree to assume all risks of injury or death that may result from skiing or which relate in any way to the use of this equipment INCLUDING NEGLIGENCE OF PROVIDERS."

¶ 16      The document was filled out, dated, and signed electronically by plaintiff. It included plaintiff's first and last name, date of birth, and telephone number, followed by an

electronic signature by "Dom Barahona." At the bottom of the agreement, in a section titled "Electronic Signature Consent," there was a checked box indicating that "By checking here, you are consenting to the use of your electronic signature in lieu of an original signature on paper."

¶ 17                                      D. Summary Judgment

¶ 18            On November 2, 2023, defendant filed a motion for summary judgment. Defendant asserted that "[p]rior to plaintiff's injuries occurring, plaintiff signed a liability waiver which explicitly released Snowstar from liability," entitling defendant to judgment as a matter of law.

¶ 19            The trial court held a hearing on June 11, 2024, to rule on the summary judgment motion. The court granted summary judgment to defendants and found that "the exculpatory clause applies" because it was "a waiver that was clearly entered into and relate[d] to the inherent risks of skiing."

¶ 20            This appeal followed.

¶ 21                                      II. ANALYSIS

¶ 22            On appeal, plaintiff argues that the trial court erred in granting summary judgment to defendant because there was a genuine issue of material fact about the foreseeability to plaintiff of the specific danger—the snowmaking machine—that caused plaintiff's injuries. In response, defendant asserts the liability waiver executed between the parties on February 20, 2021, fully released defendant from all liability for injuries arising from skiing at defendant's facility.

¶ 23            As a threshold issue, we note that plaintiff's counsel attached to the opening and reply briefs a certificate of compliance stating that the briefs comply with "FRAP 32(a)(7)(B)," presumably Federal Rule of Appellate Procedure 32(a)(7)(B) (which should have been properly cited as Fed. R. App. P. 32(a)(7)(b)). However, federal rules of procedure do not apply to this appeal, as it is before an Illinois state court, not a federal court. Under Illinois Supreme Court Rule

341(c) (eff. Oct. 1, 2020), counsel was required to submit a certificate of compliance with Rule 341(a) and (b) (Ill. S. Ct. R. 341(a)-(b) (eff. Oct. 1, 2020)), which he failed to do. While this does not impede our review, we remind counsel to be careful to follow the applicable court's rules.

¶ 24      Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). "We review the trial court's grant of summary judgment *de novo*." *McKinney v. Castleman*, 2012 IL App (4th) 110098, ¶ 13.

¶ 25      "In Illinois, a party may contract to avoid liability for its own negligence." *Offord v. Fitness International, LLC*, 2015 IL App (1st) 150879, ¶ 20. This type of contract is called an exculpatory agreement and "constitutes an express assumption of risk wherein one party consents to relieve another party of a particular obligation." (Internal quotation marks omitted.) *Johnson v. Salvation Army*, 2011 IL App (1st) 103323, ¶ 19. Because "[a]n agreement in the nature of a release or exculpatory clause is a contract," "the legal effect is to be decided by the court as a matter of law." *Johnson*, 2011 IL App (1st) 103323, ¶ 19. Courts interpret "the contract as a whole and apply[ ] the plain and ordinary meaning to unambiguous terms." (Internal quotation marks omitted.) *Johnson*, 2011 IL App (1st) 103323, ¶ 35. If the terms of the contract are unambiguous, "the parties' intent must be ascertained exclusively from the express language of the contract, as a matter of law." (Internal quotation marks omitted.) *Johnson*, 2011 IL App (1st) 103323, ¶ 35. Courts generally "disfavor such agreements and construe them strictly against the benefitting party, particularly one who drafted the release." *McKinney*, 2012 IL App (4th) 110098, ¶ 14.

¶ 26      Exculpatory agreements are generally enforceable unless they run contrary to public policy or the social relationship between the parties "militates against upholding the

agreement." *Johnson*, 2011 IL App (1st) 103323, ¶ 19. In this case, plaintiff does not argue that the exculpatory agreement was unenforceable for either of these reasons.

¶ 27     The scope of an exculpatory agreement is often defined by the foreseeability of a specific danger. *Offord*, 2015 IL App (1st) 150879, ¶ 20. An exculpatory agreement must include "clear, explicit, and unequivocal language referencing the type of activity, circumstance, or situation that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care." (Internal quotation marks omitted.) *Johnson*, 2011 IL App (1st) 103323, ¶ 36. A plaintiff assumes the risk of an occurrence if "the danger which caused the injury was one which ordinarily accompanied the activity and *** the plaintiff knew, or should have known, that both the danger and the possibility of injury existed before the occurrence." *Johnson*, 2011 IL App (1st) 103323, ¶ 36. However, "[t]he parties need not, at the time of the formation of the contract, contemplate the precise cause of the injury." *Offord*, 2015 IL App (1st) 150879, ¶ 20. The agreement must simply "put the plaintiff on notice of the range of dangers for which the plaintiff assumes the risk of injury." (Internal quotation marks omitted.) *Offord*, 2015 IL App (1st) 150879, ¶ 20.

¶ 28     In some cases, the foreseeability of a specific danger presents a genuine issue of fact that cannot be resolved by the record. See *Offord*, 2015 IL App (1st) 150879, ¶ 23; *Hawkins v. Capital Fitness, Inc.*, 2015 IL App (1st) 133716, ¶¶ 25, 29; *Larsen v. Vic Tanny International*, 130 Ill. App. 3d 574, 578 (1984). However, where the exculpatory agreement clearly contemplated the incident in question, foreseeability may be decided as a matter of law. See *Cox v. US Fitness, LLC*, 2013 IL App (1st) 122442, ¶ 21; *Hellweg v. Special Events Management*, 2011 IL App (1st) 103604, ¶ 6; *Maness v. Santa Fe Park Enterprises, Inc.*, 298 Ill. App. 3d 1014, 1021 (1998).

¶ 29     In *Hellweg*, 2011 IL App (1st) 103604, ¶ 3, the plaintiff was injured during a bicycling race when he collided with a nonparticipating bicyclist. Prior to the race, he signed an

exculpatory agreement stating that cycling was an inherently dangerous sport and the risks associated with participation included, " 'by way of example, and not limitation,' " the " 'dangers of collision with pedestrians, vehicles, other riders, and fixed or moving objects.' " *Hellweg*, 2011 IL App (1st) 103604, ¶ 6. The plaintiff argued that this language did not encompass the rider with whom he collided, as the rider was " 'a minor who was able to ride his bicycle onto the course due to the Defendants failing to properly close the streets.' " *Hellweg*, 2011 IL App (1st) 103604, ¶ 7. The Appellate Court, First District, concluded that the plaintiff's negligence claims were barred by the exculpatory agreement as a matter of law, as the agreement "plainly assign[ed] plaintiff the risk of collision on the course, including, *but not limited to*, 'collision with pedestrians, vehicles, other riders, and fixed or moving objects,' " which "include[d] plaintiff's collision" with the nonparticipating rider. *Hellweg*, 2011 IL App (1st) 103604, ¶ 7. The court noted that not all possible scenarios of a rider being injured needed to "be enumerated in the release," as long as the language of the exculpatory agreement was "broad enough to reasonably demonstrate the parties contemplated the risk at issue." *Hellweg*, 2011 IL App (1st) 103604, ¶ 7.

¶ 30    Even exculpatory clauses that are less specific about the types of possible risks have barred negligence claims. In *Masciola v. Chicago Metropolitan Ski Council*, 257 Ill. App. 3d 313, 314 (1993), the plaintiff participated in a ski race sponsored by the defendant where he was injured because of "a fall from a compression area in the ski racecourse which caused him to be thrown into the poles marking the finish line." The plaintiff signed a waiver of liability stating "ski racing is a dangerous sport which can lead to serious injury." *Masciola*, 257 Ill. App. 3d at 314. The trial court granted, and the appellate court affirmed, summary judgment to defendants, finding that "[w]hile the parties may not have contemplated that plaintiff would be injured by skiing over a compression area in the ski racecourse, they could and did contemplate a broad range of accidents

which occur during skiing, including problems with the surface of the ski racecourse." *Masciola*, 257 Ill. App. 3d at 317-18. Summary judgment was therefore proper because "there was no genuine issue of material fact as to whether the exculpatory agreement encompassed plaintiff's injuries." *Masciola*, 257 Ill. App. 3d at 319.

¶ 31 In contrast, in *Offord*, the plaintiff slipped on an "accumulation of water that was the result of a 'leaking roof and/or skylight and/or window' " in a fitness facility. *Offord*, 2015 IL App (1st) 150879, ¶ 5. He had signed an exculpatory agreement that was "extremely broad, providing that plaintiff releases Fitness International from liability for 'all claims arising from my *** use of LA Fitness' facilities, services, equipment or premises.' " *Offord*, 2015 IL App (1st) 150879, ¶ 21. However, the First District found that this agreement "does not make any mention of shielding defendant from liability from the building itself being defective," so "plaintiff could not possibly have foreseen or contemplated that a leak from a defective roof would cause his injury," unlike if the condensation had been caused by "perspiration, a spilled beverage, or cleaning products." *Offord*, 2015 IL App (1st) 150879, ¶ 21. As a result, the court found that the plaintiff "raised a sufficient factual issue to defeat the dismissal of his claim at this stage of the proceedings." *Offord*, 2015 IL App (1st) 150879, ¶ 23.

¶ 32 This case is more like *Hellweg* and *Masciola* than *Offord*. Even construed strictly against defendant, the exculpatory agreement unambiguously informed plaintiff of the risk of injuries resulting from collisions with marked or unmarked snowmaking machines and thus bars plaintiff's negligence claims as a matter of law. The agreement explicitly stated that skiing included inherent risks,

> "which may include but are not limited to: collisions with others (whether participants or not) or *with objects* (*whether marked or unmarked and whether*

*padded or unpadded*) such as trees, rocks, stumps, forest growth, debris, natural

obstacles, terrain features, guy wires, lift towers, poles, fences, signs, *snowmaking*

*equipment*, and vehicles. Falls, awkward landings and collisions are also inherent

from variations in snow/ice conditions such as bare spots, black ice, moguls, surface

variations, slope design and weather conditions." (Emphases added.)

The agreement also specifically explained:

"[I]njuries can occur as the result of these inherent risks, which include but are not

limited to, muscle strains and sprains, bruises, contusions, abrasions, sunburn,

muscle soreness, broken bones, ligament and joint injuries, back and neck injuries,

concussions, internal injuries, eye injuries, brain or spinal cord injuries, heart

attack, stroke, and even death."

By signing the agreement, participants, like plaintiff, indicate that they "fully understand and

accept [the agreement's] terms," "intend [their] signature to be a complete and unconditional

release of all liability," and "agree to assume all risks of injury or death that may result from skiing

or which relate in any way to the use of this equipment INCLUDING NEGLIGENCE OF

PROVIDERS."

¶ 33        It is hard to imagine how the agreement could have been more specific about the

types of dangers that plaintiff may have encountered while skiing on defendant's property. An

exculpatory agreement must include clear language about "the *type of activity, circumstance, or*

*situation* that it encompasses" for the plaintiff to knowingly assume the risk of that danger or

injury. (Emphasis added and internal quotation marks omitted.) *Johnson*, 2011 IL App (1st)

103323, ¶ 36. Here, the agreement did just that—it explicitly warned plaintiff that he faced the risk

of "collisions *** with objects (whether marked or unmarked and whether padded or unpadded)

- 11 -

such as *** snowmaking equipment." Because an exculpatory agreement must only encompass the type of situation that presents a risk (see *Johnson*, 2011 IL App (1st) 103323, ¶ 36), plaintiff did not have to foresee a collision with this particular snowmaking machine, only the possibility of a collision with any snowmaking machine, even if unmarked. See *Hellweg*, 2011 IL App (1st) 103604, ¶ 7 (holding that not all scenarios "in which a rider is injured," including the scenario of colliding with a nonparticipating rider, needed to "be enumerated in the release," as it "is sufficient if the language used [in the exculpatory agreement] is broad enough to reasonably demonstrate the parties contemplated the risk at issue"). Unlike *Offord*, plaintiff in this case was injured in the exact way that the agreement contemplated. Because the agreement explicitly and unambiguously warned plaintiff of the possibility of colliding with a snowmaking machine, he "knew, or should have known, that both the danger and the possibility of injury existed before the occurrence." *Johnson*, 2011 IL App (1st) 103323, ¶ 36. Plaintiff's collision with an unmarked, unpadded snowmaking machine was therefore foreseeable as a matter of law.

¶ 34         There is no requirement, nor does plaintiff cite any case law supporting his argument, that the agreement needed to methodically and thoroughly list the exact location of every piece of snowmaking equipment with which plaintiff could conceivably collide. In fact, such a requirement is explicitly disclaimed by case law establishing that "[t]he parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable." (Internal quotation marks omitted.) *Hellweg*, 2011 IL App (1st) 103604, ¶ 7. This agreement was actually *more* specific than it needed to be; in *Masciola*, the agreement at issue was less specific about the types of possible risks—stating only that "ski racing is a dangerous sport which can lead to serious injury"—and yet was still specific enough to encompass a collision with poles due to "problems with the surface of the ski racecourse" and

consequently bar any resulting negligence claims. *Masciola*, 257 Ill. App. 3d at 314, 318. Here, the agreement included a long and specific list of many possible obstacles a participant could collide with while skiing at defendant's property, including snowmaking machines. Requiring any more specificity would be not only be extremely burdensome, but impractical—defendant could not plausibly list the location of every fixed and mobile snowmaking machine in the agreement, nor could participants plausibly remember the location of each of them even if they were listed.

¶ 35    Plaintiff's lack of skiing experience does not change this outcome. In some cases, courts have considered the plaintiff's experience in determining whether they subjectively understood the risks they were assuming in undertaking a specific activity. See *Harris v. Walker*, 119 Ill. 2d 542, 549 (1988); *Schlessman v. Henson*, 83 Ill. 2d 82, 86 (1980). For example, the plaintiff in *Harris* was barred from asserting a negligence claim after falling off his horse. He was an "experienced rider and *** understood the release he signed," which stated that participants " 'shall release [the defendant] of any liabilities you may incur while on the premises or for any injury which may result from horseback riding.' " *Harris*, 119 Ill. 2d at 549. The Illinois Supreme Court concluded that the agreement's "terms are broad enough to cover the situation at issue," as "only the most inexperienced of horseback riders would not understand that under certain conditions a horse may become spooked or 'side-shocked' and cause a rider to fall from the horse." *Harris*, 119 Ill. 2d at 549. Here, plaintiff's lack of prior skiing experience is irrelevant, as plaintiff did not need to have skiing experience to know of the possibility of colliding with unmarked snowmaking machines—he only had to read the agreement, which explicitly warned him of that risk.

¶ 36    Plaintiff argues that "[h]ad he known at that time there were pieces of snow-making machines in those woods, *** it is quite likely he would have reacted differently when confronted

with the young skier crossing his path and would have gone to great lengths to avoid the area." However, this argument is unavailing. First of all, as discussed above, the exculpatory agreement only had to warn plaintiff of the type of danger, not the precise location of every possible danger. Moreover, this argument directly contradicts both the agreement's requirement that participants "be under control at all times" and plaintiff's testimony that he "knew that [he] wasn't going to be able to get [him]self under control." If plaintiff had no control over his trajectory, he would not have been able to react differently even if he had known the precise location of the snowmaking machine that he ultimately collided with.

¶ 37        Because the exculpatory agreement allowed plaintiff to foresee a possible collision with an unmarked snowmaking machine, the agreement bars plaintiff's negligence claims against defendant. Plaintiff does not argue that the agreement is contrary to public policy or otherwise unenforceable. Plaintiff validly consented to the agreement, as he testified that he (1) filled out the waiver to receive rental equipment, (2) checked the box indicating that he consented to using an electronic signature, (3) reviewed the document before signing it electronically, (4) understood that skiing had inherent risks, and (5) intended his electronic signature to be a complete and unconditional release of liability. Consequently, under the explicit language of the agreement, plaintiff validly "ASSUM[ED] INHERENT RISKS, RELEAS[ED] FROM LIABILITY AND WAIV[ED] CERTAIN RIGHTS, INCLUDING THE RIGHT TO SUE [DEFENDANT]" for any "NEGLIGENCE OF PROVIDERS." The agreement thus unambiguously absolved defendant of all claims arising out of plaintiff's injury, even if caused by defendant's own negligence. The trial court thus did not err in granting summary judgment in favor of defendant, as there was no genuine issue of material fact and defendant was entitled to a judgment as a matter of law.

¶ 38                                    III. CONCLUSION

¶ 39         For the reasons stated, we affirm the trial court's judgment.

¶ 40         Affirmed.