(No. 32699.

WILLIS JACKSON, Appellant, *vs.* FIRST NATIONAL BANK OF LAKE FOREST *et al.*, Appellees.

*Opinion filed September 24, 1953.*

ERNEST S. GAIL, of Highland Park, and HUBBARD, HUBBARD & DORGAN, of Chicago, (ALVIN GLEN HUBBARD, and REESE HUBBARD, both of Chicago, of counsel,) for appellant.

TOM L. YATES, of Chicago, for appellee First National Bank of Lake Forest; HALL, MEYER & VAN DUSEN, of Waukegan, (LLOYD A. VAN DUSEN, of counsel,) for appellee John F. Leonardi.

DONALD N. CLAUSEN, HERBERT W. HIRSH, and NORMAN A. MILLER, all of Chicago, *amici curiae.*

Mr. JUSTICE FULTON delivered the opinion of the court:

Appellant, Willis Jackson, brought an action in the circuit court of Lake County against First National Bank of Lake Forest, individually and as trustee, and John F. Leonardi, seeking damages for permanent injuries allegedly sustained through defendants' negligence when appellant fell

down an outside cellarway located at the rear of certain business premises in the village of Highland Park. At the close of plaintiff's evidence the trial court directed a verdict against the plaintiff and in favor of the bank individually and as trustee on all counts of the complaint. At the close of all the evidence the court directed a verdict in favor of defendant Leonardi on counts II, III and IV and the case was submitted to the jury upon count I as against Leonardi. The jury returned a verdict in favor of the plaintiff in the sum of $5000 and the court entered judgment upon the verdict. Defendant Leonardi then filed motions to set aside the judgment and for judgment notwithstanding the verdict and the plaintiff filed a motion for a new trial as to the bank only. Defendant's motions were allowed and plaintiff's motion was denied. Whereupon the court entered judgment for the defendant Leonardi notwithstanding the verdict. Plaintiff appealed to the Appellate Court for the Second District. The Appellate Court affirmed the judgment of the trial court in all respects and the case is here after the granting of a petition for leave to appeal.

Appellant's complaint as amended contained four counts. The first count was directed against both defendants alleging the violation of their common-law duty owed to appellant as a tenant to keep the stairway and its railings in proper repair. The second count was directed against both defendants and, in addition to allegations of common-law negligence as in count I, charged the violation of certain ordinances of the village of Highland Park requiring stairways of certain width to have at least two handrails and specifying risers not more than eight inches high and treads not less than ten inches wide. Count III was like count II except that it was directed against the defendant Leonardi only and count IV is the same except that it was directed against the bank alone. The complaint alleged that the defendants owned, controlled and operated a certain one-story business building in the village of Highland Park which

was divided into several storerooms bearing the numbers 51, 53, 55, 57 and 59 S. St. Johns Avenue; that they rented to plaintiff the storerooms of the building numbered 51 and 53 together with a room in the basement under number 53 with a right of ingress and egress to such room over lands in the rear of said building and down an outside stairway to the furnace room in the basement maintained by defendants and thence to the basement room rented by plaintiff where he maintained certain boilers and apparatus used in connection with the operation of his tailor shop, cleaning and pressing establishment and shoe-repair shop. The complaint alleged that the stairway in the back of the building leading to the basement room was the only means of ingress to and egress from that part of the building; that it was an open stairway with walls and steps of concrete; that the top of the concrete wall forming the south side or outside of the areaway was at ground level; that attached to the top of this concrete wall was an iron pipe railing with three upright standards fastened into the top of the concrete wall and the ends of its horizontal rails fastened to the west wall of the building; that on the north side of the areaway was a brick wall being part of the south wall of the building to which was attached an iron handrail to be used by those ascending and descending but that there was no handrail on the south side of the stairs.

The complaint further alleged that the upright railing was for the protection of those using the stairway, including the plaintiff; that it was the duty of defendants to use due care to maintain said stairway and railing in a reasonably safe condition; that defendants in violation of their duty negligently allowed the railing to become worn, fragile, broken and rusted; that they knew or in the exercise of reasonable care should have known of this condition; that plaintiff while in the exercise of due care for his own safety and while attempting to use the stairway as a means of ingress to the basement storeroom suffered a fall due

to the breaking of the railing he was using in descending, causing serious and permanent injuries. The complaint also alleged that the stairs were negligently constructed and maintained in violation of certain provisions of the village ordinances above referred to; that the treads sloped from the risers toward the nosings, and that this negligence also contributed to plaintiff's injuries.

The defendant bank by its separate answer admitted that it held legal title to the premises as trustee but denied that it owned or controlled the premises or any part thereof. The answer further denied that it owed any duty whatever toward plaintiff, set forth certain portions of the written lease and trust agreement and denied the negligence alleged. As an affirmative defense the bank pleaded an exoneration clause found in paragraph 7 of plaintiff's lease. Defendant Leonardi's separate answer denied ownership, admitted leasing of the premises to the plaintiff for business purposes, admitted receiving rents, denied the negligence complained of and also pleaded the exoneration clause as an affirmative defense.

Certain facts are not disputed. Defendant Leonardi was the donor in a certain trust agreement with the bank whereby the legal title to the premises in question and other real estate was held by the bank in trust to pay the net income to the donor for life and after his death to members of his family, with provisions as to the eventual distribution of the *corpus*. The agreement provided that the trustee "shall sell, lease, mortgage and otherwise deal with the property * * * as, if and when and only as, if and when directed in writing so to do by the Donor during his lifetime. During the Donor's lifetime he shall be solely responsible for the payment of taxes, assessments, repairs, maintenance, insurance premiums and all other costs and expenses incident to the ownership, maintenance and upkeep of said premises and for the leasing of said premises and the collection of rents thereon and the payment of all com-

missions or other charges to agents and brokers employed in the management and operation or sale of said premises." The trust agreement is dated December 13, 1941. Leonardi acquired the business property here involved in July of 1946 and placed it in trust with the bank at that time under the aforesaid agreement. Plaintiff, Jackson, was already occupying a part of the premises. He had been in business at that address since 1944. On May 27, 1947, the bank as trustee entered into a lease agreement with Jackson, leasing to him the same premises he had been occupying for a further period of five years, beginning on July 1, 1947, and ending on June 30, 1952. The lease provided for a total rental of $10,800, payable in monthly installments of $180 at the offices of John F. Leonardi, agent, Highwood, Illinois. Leonardi negotiated this lease with the plaintiff and collected all of the rents thereunder. He was the manager of the building. The bank collected no rents and was not requested to assume any managerial duties. Clause 7 of the lease provided: "Lessor shall not be liable to Lessee for any damage or injury to him or his property occasioned by the failure of Lessor to keep said premises in repair, and shall not be liable for any injury done or occasioned by wind or by or from any defect of plumbing, electric wiring or of insulation thereof, gas pipes, water pipes or steam pipes, or from broken stairs, porches, railings or walks, or from the backing up of any sewer pipe or down-spout, or from the bursting, leaking or running of any tank, tub, washstand, water closet or waste pipe, drain, or any other pipe or tank in, upon or about said building or premises nor from the escape of steam or hot water from any radiator, it being agreed that said radiators are under the control of Lessee, nor from any such damage or injury occasioned by water, snow or ice being upon or coming through the roof, skylight, trap-door, stairs, walks or any other place upon or near said premises, or otherwise, nor for any such damage

or injury done or occasioned by the falling of any fixture, plaster or stucco, nor for any damage or injury arising from any act, omission or negligence of co-tenants or of other persons, occupants of the same building or of adjoining or contiguous buildings or of owners of adjacent or contiguous property, or of Lessor's agents or Lessor himself, all claims for any such damage or injury being hereby expressly waived by Lessee." Plaintiff was injured on February 19, 1948, when he fell on the outside stairway in the rear of the premises in question while going down to the basement room leased to him. The iron railing at the top of the wall was found to be broken after plaintiff's fall. All three of the upright posts were broken off or pulled loose and the rail remained fastened only where its horizontal parts were attached to the west wall of the building.

The first question to be considered is whether the action of the trial court in directing a verdict for the bank on all counts at the close of plaintiff's case was proper. In directting a verdict the court held that clause 7 of the lease constituted a complete defense to plaintiff's action so far as the bank was concerned. The Appellate Court has affirmed that ruling. Appellant contends that the agreement, insofar as it purports to exempt the lessor from liability for negligence, is void as against public policy and that the trial court erred in directing a verdict. Thus the question as to the validity of clause 7 of the lease is directly presented for our consideration.

In what respects or to what extent the parties to a legal relationship may, by contract, destroy the incidents normally arising from such relationship, is always a difficult question for the courts. On the one hand, because both State and Federal constitutions guarantee freedom of contract, the courts are anxious to preserve the rights of the parties arising by agreement where the contract has been freely entered into and is not tainted with fraud. On the other hand, the courts have recognized the desirability of pre-

serving those legal rights and duties arising by operation of law out of the creation of certain legal relationships and, for the general social good, have refused to recognize the validity of some agreements seeking to set them aside. Thus while some of the legal incidents arising upon the creation of the relationship can be avoided by express contract, others cannot, and the courts, in considering whether or not effect shall be given to the particular agreement in question have constantly to weigh the advantages of preserving the contract of the parties against the disadvantages of possible serious social consequences arising from its enforcement. Contracts by which one seeks to relieve himself from the consequences of his own negligence fall within this category. They attempt to abrogate certain rights and duties normally arising. Whether or not, in a given case, effect shall be given depends upon a complexity of considerations, and the rules and principles deducible from the opinions of the courts are not always clear. Generally, we believe it may be said that such contracts will be enforced unless (1) it would be against the settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement. Illustrative of exculpatory agreements held to be void on grounds of public policy are those by which a common carrier of goods or passengers attempts to avoid liability for loss or damage arising from its negligence or that of its servants. Such agreements are universally held to be void and unenforceable. (Am. Jur. 874, sec. 739.) Among the contracts held to be void because of the social relationship of the parties are those between employer and employee which would exonerate the employer from liability for future negligence either of himself or other employees. 35 Am. Jur. 565, sec. 136; *Campbell* v. *Chicago, Rock Island and Pacific Railway Co.* 243 Ill. 620.

Though there have been pronouncements that one may never, by contract, avoid liability for his negligence, that has not been the law of this State, and this court has, under proper circumstances, recognized the validity of such agreements. In 1899, in *Blank* v. *Illinois Central Railroad Co.* 182 Ill. 332, this court held that the railroad company might by contract relieve itself from liability for injury to an express messenger; that, while the railroad could not, because of its position as a public carrier, relieve itself from liability to a fare-paying passenger, it could do so as to an employee of the express company, riding in an express car and attending to express business, there being no obligation on the part of the railroad as a common carrier to carry express or the employees of express companies. The same rule was applied to a contract relieving a railroad company from liability to a porter employed by a sleeping car company in *Chicago, Rock Island and Pacific Railway Co.* v. *Hamler,* 215 Ill. 525. Again, it was observed that the railroad was not acting as a common carrier in transporting employees of the sleeping car company. In 1913, this court decided a case involving an exculpatory agreement growing out of the landlord and tenant relationship. (*Checkley* v. *Illinois Central Railroad Co.* 257 Ill. 491.) In that case the railroad company leased a portion of its right of way for elevator and warehouse purposes, the lease providing that the lessee would assume all risk of loss by fire even though caused by the negligence of the railroad company's servants. The court held that the railroad was not acting in its capacity as common carrier in leasing the property in question; that the contract was not against public policy and that its provisions would be enforced. It was observed that the question of who might have to bear the loss was not a matter of public concern. In *Bartee Tie Co.* v. *Jackson,* 281 Ill. 452, this court upheld the validity of an agreement in a lease providing that a railroad com-

pany which leased its lands adjacent to its right of way for the storage of ties should not be liable for negligence resulting in the destruction of the ties by fire. We held that the contract in question was not void as against public policy, the bearing of the loss not being a matter of public concern, since the railroad was not acting in its capacity as common carrier in the particular transaction. This court has, therefore, gone upon record as approving exculpatory agreements in business leases relieving the landlord from liability for injuries to the tenant's property due to the negligence of the landlord or his servants.

An examination of the authorities in other jurisdictions leads us to the conclusion that by the great weight of authority the rule is that an exculpatory clause, specifically or generally providing that the lessor shall not be liable for damages or injuries to the lessee or his property from all or certain causes, is not against public policy but is valid and enforceable. (See Annotation: 175 A.L.R. 8, 83.) The cases emphasize that there is nothing in the lessor-lessee relationship which in and of itself militates against the validity of such agreements; that such agreements relate to the private affairs of the parties and their private business; that they are not a matter of public concern. No distinction has been made between agreements relieving the landlord from liability for negligent injury to the tenant's property and those which relieve from liability for injuries to the person.

In accordance with former decisions of this court and those of other jurisdictions, the provisions of the lease now before us are valid and enforceable unless there is something in the social position or social relationship of the parties opposed to its operation. It is suggested by appellant that there is a disparity of bargaining power between the parties to this agreement, so that to enforce it would result in great injustice. The inference sought to be drawn from this line of argument is that the lessee had no free-

dom of choice; that he had either to accept what was offered or be deprived of the advantages of the relationship. There is nothing in the record or the circumstances surrounding the parties to bear out this contention. This is a business lease. There is nothing to suggest that the parties were not dealing at arms' length and upon equal footing. No facts are brought to our attention from which it might be reasonable to infer that the lessee was forced to take the storeroom upon lessor's terms. Certainly we are not prepared to say that in all transactions involving business leases there is always a balance of bargaining power in favor of the landlord.

It is also suggested that contractual provisions of the type now under consideration are always to be strictly construed against the party in whose favor they operate and this is the announced rule of most of the courts. But there is nothing to suggest that the clause now under consideration is not broad enough or explicit enough in its terms to cover the situation presented by this record. The lease purports to exempt the lessor from liability to the lessee for any damage or injury to him or his property occasioned by the failure of the lessor to keep the premises in repair, and broken stairs, porches and railings, and all injuries taking place thereon or arising therefrom, are specifically mentioned. All claims for any such damages are expressly waived by the lessee. Thus both by specific terms and general provisions the lease covers the present situation. We find that its provisions, applied to the facts before us, are not contrary to the settled public policy of this State and that there is nothing in the apparent social relationships of the parties to prevent its enforcement. The trial court properly directed the verdict in favor of the bank as lessor.

In setting aside the verdict of the jury and awarding judgment in favor of the defendant Leonardi notwithstanding the verdict, the trial court held that the defect in the railing which gave way was a latent defect; that the

defendant did not know of the condition and could not, by the exercise of reasonable care, have discovered it; that he was, therefore, not liable. In considering whether or not this ruling was correct, this court is not permitted to weigh the evidence. In considering whether a judgment should be set aside, the court must view all the evidence in the light most favorable to the plaintiff and if it tends to show any negligence on the part of the defendants which caused plaintiff's injury, then the case was properly submitted to the jury and its verdict should not be disturbed.

The evidence clearly shows that neither plaintiff nor defendant Leonardi actually knew of any defective condition in the railing. Leonardi testified that he had used the stairway on numerous occasions after purchasing the building and prior to February 19, 1948; that his last use of the stairway was within a month prior to the accident; that on all occasions he had observed the rail and the steps; that he saw no defects in the rail or its supports; that the metal itself looked perfectly good. Leonardi further testified that no one had ever complained to him prior to the accident of there being any defective condition in the railing. Plaintiff used the stairway more frequently than Leonardi. He testified that he went up and down the stairs as often as three times a day. On the date of the accident he had already made one trip to the basement and was on his way down for the second time before 7:15 A.M. when the accident happened. Plaintiff testified that he too had observed the railing on numerous occasions; that it appeared to him to be all right. The facts brought out by the foregoing testimony on both sides are undisputed. It seems to be the inescapable conclusion from all of the evidence that the defect in the railing was not apparent, but concealed, otherwise plaintiff with numerous opportunities to observe it, must have seen it. The defect did not become apparent until the plaintiff, in the act of falling grabbed the railing and it broke or came loose.

There being no evidence that defendant Leonardi actually knew or had notice of any defective or dangerous conditions in the railing, he must be held liable, if at all, upon the ground that he failed to use ordinary care to discover the defective condition. Again the evidence is clear that there was nothing observable from ordinary inspection on the outside of the railing indicating any defect. There was nothing which from ordinary inspection would lead either plaintiff or defendant to believe there was a hidden defect in the railing. For all that appears defendant would have to have taken the railing apart to have discovered the fault. This he was not required to do in the exercise of ordinary care. Just what caused the plaintiff to fall in the first place is not clear. His own testimony is conflicting as appears from the abstract of record and the additional abstract of record filed by defendant Leonardi. It fairly appears from all the evidence, however, that plaintiff was one, two or perhaps three steps down the stairs before he started to fall; that when he started to fall he grabbed the railing for support; that it was only when this strain of the fall and the weight of his body was placed on the railing that it broke. We conclude that it is clear from all the evidence that the defect in the railing was a latent defect; that defendant Leonardi had no knowledge or notice of the condition and that he did not fail in his duty to use ordinary care to discover such a defect. There is no evidence in the record, considering it with all inferences and intendments favorable to the plaintiff, tending to show negligence on the part of Leonardi, and the action of the court in entering judgment in his favor, notwithstanding the verdict of the jury, was in accordance with the law and the evidence.

Our attention has been called to the fact that appellant has not appealed from the order of the trial court directing a verdict in favor of Leonardi on counts II, III and IV at the close of all the evidence. It is also pointed out that appellant did not file a motion for a new trial as to Leonardi.

Therefore the alleged violations of the village ordinances are not to be considered as to defendant Leonardi on this appeal. Counsel for appellant concede this point in their brief and argument. Counsel for appellee Leonardi have also argued that the exculpatory clause in the lease protects Leonardi from liability as well as the bank though he is not a party to the lease, but under the view we have taken of the evidence, it becomes unnecessary to pass upon this contention..

The judgment of the Appellate Court affirming the judgment of the circuit court of Lake County will, therefore, be affirmed.

*Judgment affirmed.*