# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *McKinney v. Castleman*, 2012 IL App (4th) 110098

---

| | |
|---|---|
| Appellate Court Caption | DANIEL L. McKINNEY, Plaintiff-Appellant, v. JEFF CASTLEMAN, Individually and as Agent of THE SALVATION ARMY; and THE SALVATION ARMY, a Not-for-Profit Corporation, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0098 |
| Filed | April 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered while performing "work therapy" in a drug and alcohol rehabilitation program operated by defendant Salvation Army and for retaliatory discharge based on his discharge from the program after he filed a workers' compensation claim, the trial court properly entered summary judgment for defendant, since plaintiff signed a "Beneficiary's Admittance Statement" and another statement regarding the work therapy before joining the program and the exculpatory clause contained in those documents constituted an unambiguous waiver of liability by plaintiff for any claims against defendant for loss or damage arising from plaintiff's participation in the program. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 09-L-99; the Hon. Patrick W. Kelley, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Daniel L. McKinney, of Springfield, appellant *pro se*. |
| | James W. Ford, of Brenner, Ford, Monroe & Scott, Ltd., of Chicago, for appellees. |
| Panel | JUSTICE COOK delivered the judgment of the court, with opinion. Presiding Justice Turner and Justice Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1     In April 2009, plaintiff, Daniel L. McKinney, sued defendants, the Salvation Army and Jeff Castleman, whom McKinney calls its "director of operations," for injuries McKinney sustained while performing "work therapy" tasks related to his drug and alcohol rehabilitation in a Salvation Army program. McKinney alleged that defendants' negligence caused his injuries and that they wrongfully discharged him from the program in retaliation for his filing a workers' compensation claim. In July 2009, the trial court dismissed McKinney's retaliatory-discharge claims. In January 2011, the trial court entered summary judgment in favor of defendants on McKinney's remaining negligence claims. McKinney appeals, arguing summary judgment was inappropriate. We disagree with McKinney and affirm.

¶ 2                                                     I. BACKGROUND

¶ 3     In March 2008, McKinney entered the adult rehabilitation program at the Salvation Army in Springfield. The Salvation Army, a religious and charitable organization, operates the adult rehabilitation program for "the social and physical rehabilitation and the spiritual regeneration" of the program's beneficiaries. Beneficiaries in the program are offered religious, educational, and therapeutic services, housing, and food for 12 months, so long as they participate actively in their rehabilitation and continue to require such services. As part of the rehabilitation program, beneficiaries are expected to participate in "work therapy" by performing assigned tasks under the supervision of Salvation Army employees.

¶ 4     As a condition of his admission into the Salvation Army rehabilitation program, McKinney was required to agree to the terms of a one-page document entitled "Beneficiary's Admittance Statement" and another one-page statement regarding work therapy. The beneficiary's admittance statement defined McKinney's relationship with the Salvation Army. In relevant part, the statement contained a clause providing, "I agree for myself, my heirs or assigns, that should any accident occur involving personal injury to myself or loss

or damage to my property during my residence in this Center, to hold The Salvation Army free and harmless from any and all liability in connection therewith." It further indicated beneficiaries are not considered employees of the Salvation Army but are expected voluntarily to perform "such duties as may be assigned." The work-therapy statement provided that work therapy is essential to a beneficiary's rehabilitation and is "never to be considered employment."

¶ 5    The director of the rehabilitation program, Lance Marshall, explained the nature of the program and the terms of these agreements to McKinney. Marshall reviewed the statements with McKinney and signed them as a witness. McKinney's signature appears on both documents, dated March 11, 2008.

¶ 6    In July 2008, McKinney suffered wrist injuries when he fell from a ladder in the warehouse at the rehabilitation center while performing tasks as part of his work therapy. Later that year, McKinney filed a claim for workers' compensation benefits against the Salvation Army. An arbitrator who heard McKinney's claim found McKinney could not recover workers' compensation benefits because he was not an employee of the Salvation Army. In September 2008, after McKinney had filed his workers' compensation claim, McKinney was involuntarily discharged from the rehabilitation program.

¶ 7    In April 2009, McKinney sued the Salvation Army, Inc., Castleman, and Salvation Army Services, Inc., in a six-count complaint. McKinney claimed he was harmed by (1) each defendant's negligence and (2) his retaliatory discharge from the program after he filed for workers' compensation benefits. The claims against Salvation Army Services, Inc., were later dismissed without objection, and McKinney proceeded on his claims against the Salvation Army and Castleman.

¶ 8    In July 2009, the trial court granted defendants' motion to dismiss McKinney's retaliatory-discharge claims. The court made no specific findings. Defendants had argued McKinney could not make out a claim of retaliatory discharge because he was at no time an employee of the Salvation Army–a fact that could not be relitigated, defendants contended, after it was conclusively found by the workers' compensation arbitrator. As employment was an essential element of retaliatory discharge, defendants argued, McKinney would be unable to prove these claims.

¶ 9    In July 2010, defendants moved for summary judgment on the remaining negligence counts. They argued McKinney's claims were barred by the exculpatory clause of the beneficiary's admittance statement, whereby McKinney agreed to hold the Salvation Army free from liability for injuries sustained while he was in the rehabilitation program. In January 2011, the trial court granted defendants' motion, finding the exculpatory clause "constitutes an unambiguous waiver of liability by Plaintiff of a claim against Defendant of loss or damage during Plaintiff's residence at the Salvation Army facility."

¶ 10    This appeal followed.

¶ 11                                      II. ANALYSIS

¶ 12    On appeal, McKinney, now proceeding *pro se*, argues summary judgment was inappropriate. Defendants argue the trial court properly enforced the exculpatory clause in

the beneficiary's admittance statement. They cite the First District Appellate Court's decision in *Johnson v. Salvation Army*, 2011 IL App (1st) 103323, 957 N.E.2d 485, as persuasive authority. Because we find *Johnson* persuasive and controlling, we affirm.

¶ 13    "Summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* ¶ 18, 957 N.E.2d at 490. We review the trial court's grant of summary judgment *de novo*. *Id.*

¶ 14    "An exculpatory agreement constitutes an express assumption of risk wherein one party consents to relieve another party of a particular obligation." (Internal quotation marks omitted.) *Id.* ¶ 19, 957 N.E.2d at 490. Courts disfavor such agreements and construe them strictly against the benefitting party, particularly one who drafted the release. *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 395, 493 N.E.2d 1022, 1029 (1986). Nevertheless, contracting parties are free to "allocate the risk of negligence as they see fit, and exculpatory agreements do not violate public policy as a matter of law." *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 412, 869 N.E.2d 195, 201 (2007). Accordingly, an otherwise valid exculpatory agreement is generally enforceable "unless (1) it would be against a settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement." (Internal quotation marks omitted.) *Harris v. Walker*, 119 Ill. 2d 542, 548, 519 N.E.2d 917, 919 (1988). Principally at issue in this respect is whether the exculpatory clause in the beneficiary's admittance statement was against public policy. Public policy dictates that parties cannot enter into an enforceable exculpatory agreement if they are (1) employer and employee; (2) "the public and those charged with a duty of public service, such as a common carrier or a public utility"; or (3) persons or entities enjoying "a disparity of bargaining power so that the agreement does not represent a free choice on the part of the plaintiff," such as an agreement with a monopoly. *Johnson*, 2011 IL App (1st) 103323, ¶ 19, 957 N.E.2d at 491.

¶ 15    "An agreement in the nature of a release or exculpatory clause is a contract, and the legal effect is to be decided by the court as a matter of law." *Id.* To be enforceable, "[a]n exculpatory agreement must contain clear, explicit, and unequivocal language referencing the type of activity, circumstance, or situation that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care." (Internal quotation marks omitted.) *Id.* ¶ 36, 957 N.E.2d at 495. However, it is not required that the parties contemplated "the precise occurrence which results in injury." (Internal quotation marks omitted.) *Id.* Rather, "[t]he injury must only fall within the scope of possible dangers ordinarily accompanying the activity and, therefore, reasonably contemplated by the parties." (Internal quotation marks omitted.) *Id.* That is, "it must be demonstrated *** that the plaintiff knew, *or should have known*, that both the danger and the possibility of injury existed before the occurrence." (Emphasis added.) *Id.*

¶ 16    In *Johnson*, 2011 IL App (1st) 103323, ¶ 1, 957 N.E.2d at 487, the First District enforced an identical exculpatory clause in a "beneficiary's admittance statement" between the Salvation Army and the plaintiff, a participant in a Chicago rehabilitation program. The plaintiff, who was injured in a car accident during his work therapy, advanced two arguments that his claims were not barred by the exculpatory agreement. First, he argued the

-4-

exculpatory agreement was against public policy as (1) he was an employee of the Salvation Army and (2) he did not freely enter into the agreement as he was disadvantaged by having relatively little bargaining power. *Id.* ¶¶ 20, 24, 957 N.E.2d at 491-92. The appellate court concluded the plaintiff was not a Salvation Army employee by virtue of his participation in work therapy because (1) the plaintiff's work therapy was essential to his rehabilitation and (2) the plaintiff acknowledged that work therapy did not constitute employment by signing the admissions documents. *Id.* ¶¶ 21-22, 957 N.E.2d at 491. Instead, the court considered the plaintiff's relationship with the Salvation Army to be "that of a beneficiary and [a] charitable organization." *Id.* ¶ 21, 957 N.E.2d at 491. The appellate court further found the parties' bargaining power was not so disparate as to preclude enforcement of the exculpatory clause because, in short, "(1) the food and shelter offered by [the] defendant were merely incident to the rehabilitation program; and (2) [the plaintiff] could have sought rehabilitation services elsewhere." *Id.* ¶ 24, 957 N.E.2d at 492.

¶ 17    Second, the plaintiff argued his injury occurred outside the scope of the exculpatory clause's unambiguous terms, in a gray area where the agreement was not enforceable against him. The appellate court rejected this argument, concluding the clause clearly and unambiguously applied "to [the] plaintiff's participation in the program, as a whole, including any work therapy he may perform." *Id.* ¶ 37, 957 N.E.2d at 496. It held, "The clause clearly states that the plaintiff agrees to hold [the] defendant free and harmless from any and all liability in connection with any personal injuries that occur while he is a beneficiary in the adult rehabilitation program," including the injury he suffered during work therapy. *Id.* ¶ 38, 957 N.E.2d at 496.

¶ 18    The reasoning in *Johnson* is persuasive and applicable in this case. McKinney has not articulated any reason for us not to follow it. McKinney argued before the trial court that the exculpatory agreement here was unenforceable as against public policy because (1) he was an employee of the Salvation Army and (2) he suffered a lack of bargaining power that prevented him from negotiating around the exculpatory clause. These arguments were convincingly resolved in *Johnson* in favor of the Salvation Army. As with the plaintiff in that case, McKinney signed an agreement indicating he understood his participation in work therapy did not amount to employment, and McKinney enjoyed the option of rejecting the exculpatory clause by not admitting himself into the Salvation Army program. The Salvation Army is clearly at liberty to impose conditions on admissions into its rehabilitation programs, including constraints on its liability for negligent acts or omissions, and McKinney's participation in the program was not mandatory, even if it seemed essential to him at the time.

¶ 19    McKinney further argued below that the exculpatory clause was impermissibly ambiguous. This argument, too, was satisfactorily addressed in *Johnson*. To the analysis in that case, we would add that the work-therapy statement read and signed contemporaneously with the beneficiary's admittance statement adequately put McKinney on notice that the rehabilitation program entailed a risk that he would be injured while participating in work therapy. Specifically, a section of that document concerned the immediate reporting of work-therapy injuries to the beneficiary's supervisor. While McKinney asserts he did not know what particular duties he would be assigned, we conclude, based on *Johnson* and our review

of the relevant documents, that he was sufficiently informed of the risk of injury by the exculpatory clause and the work-therapy form. The exculpatory clause in the beneficiary's admittance statement was unambiguous and covered any injury McKinney suffered while a participant in the rehabilitation program, including work therapy, which McKinney knew or should have known carried a risk of injury. McKinney's injury while performing work-therapy tasks was not so unforeseeable that the exculpatory agreement should not be enforced in this case.

¶ 20    McKinney raises several new arguments on appeal. These arguments have been forfeited. See *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879 (1985) ("It is axiomatic that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal."). Moreover, they lack merit. Initially in this discussion of his claims raised for the first time on appeal, we note that some of McKinney's arguments, concerning the fiduciary duties of trustees, have no apparent relevance to the issues before us, and indeed, their relevance is never explained.

¶ 21    McKinney attacks the authenticity of his signatures appearing on the admissions forms at issue and on those grounds asks us to reverse both the dismissal of his retaliatory-discharge claims and the summary judgment on his negligence claims. His argument seems to be based on an affidavit executed by Marshall, the director of the rehabilitation program, who inaccurately stated McKinney had signed the documents on March 8, 2008–a date when McKinney claims he was not even present at the Salvation Army. However, Marshall later corrected this error in an affidavit stating McKinney signed the documents on March 11, 2008, the handwritten date accompanying McKinney's signatures. McKinney points to no statement of record before the trial court that refuted the genuineness of McKinney's signatures or indicated the signatures were forged or fabricated. Any question regarding the date of the signatures was resolved by Marshall's corrective affidavit. This issue was forfeited because it was not raised below, and alternatively, without any evidence to support his claims, McKinney fails to persuade us he did not sign the admissions forms.

¶ 22    Next, McKinney argues the exculpatory agreement should not be enforced because at the time of his injury defendants had assigned an ultrahazardous activity and were grossly negligent. We will not allow McKinney effectively to amend his complaint on appeal to include what is essentially an entirely new cause of action. These claims should have been presented to the trial court in the form of a request to amend his complaint if McKinney wanted them to be addressed on their merits. Were we to consider the merits of these claims notwithstanding the forfeiture, we would find them unpersuasive as McKinney presents no coherent argument containing citation to relevant law and concerning its application in this case.

¶ 23    Finally, we note that this court has granted several of McKinney's motions to cite additional authority filed after the parties' briefs. Among them, McKinney has cited a bill recently introduced in the Illinois House of Representatives concerning contracts of adhesion. 97th Ill. Gen. Assem., House Bill 4676, 2012 Sess. As this bill has not been enacted, it has no effect and cannot be enforced in this action. McKinney has also cited in these motions numerous cases from out-of-state jurisdictions, but none of these is as persuasive as *Johnson*, which is particularly on point as it applies Illinois law and concerns facts and issues

compellingly similar to those presented in this case.

¶ 24      As McKinney raised no genuine issue of material fact and, under *Johnson* and existing principles, defendants were entitled to judgment as a matter of law, the trial court did not err in entering summary judgment in favor of defendants.

¶ 25                            III. CONCLUSION

¶ 26      For the foregoing reasons, we affirm the trial court's judgment.

¶ 27      Affirmed.