# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Spears v. Association of Illinois Electric Cooperatives*, 2013 IL App (4th) 120289

| | |
|---|---|
| Appellate Court Caption | NICHOLE SPEARS, Plaintiff-Appellee, v. THE ASSOCIATION OF ILLINOIS ELECTRIC COOPERATIVES, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0289 |
| Filed | March 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered when she fell from a pole in a college class for electrical line maintenance after she had signed a release of liability, the appellate court declined to answer a certified question as to whether the release was enforceable, since the answer would depend on the resolution of many questions of fact, and Supreme Court Rule 308 only allows the certification of questions of law. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 09-L-273; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Certified question not answered; cause remanded. |

Counsel on
Appeal

Brad A. Elward (argued) and Rex K. Linder, both of Heyl, Royster, Voelker & Allen, of Peoria, and John O. Langfelder, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant.

Ryan Reguly (argued), of Lipsky & Reguly, of Petersburg, for appellee.

Panel

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Turner and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1     In October 2009, plaintiff, Nichole Spears, sued defendant, the Association of Illinois Electric Cooperatives, for personal injuries resulting from a fall on October 16, 2007. In September 2010, defendant filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2010)). In November 2010, plaintiff filed a second amended complaint alleging one count of negligence and one count of willful and wanton conduct. In December 2010, defendant asserted affirmative defenses based on an April 2007 liability release and contributory negligence. In February 2011, the circuit court denied defendant's motion for summary judgment on both counts and granted plaintiff's motion to strike defendant's affirmative defense based on the release. In April 2011, defendant filed a motion to certify a question of law pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010). In March 2012, the court certified a question pursuant to Rule 308. We conclude the certified question requires resolution of factual predicates and decline to answer the certified question.

¶ 2                              I. BACKGROUND

¶ 3     In 2007, plaintiff enrolled at Lincoln Land Community College (College) in Springfield, Illinois, in the College's "Electrical Distribution Lineman Maintenance" associate degree program (Lineman Program). Defendant provides instructional services at the College, including a pole climbing class. As a part of the Lineman Program, plaintiff enrolled in the pole climbing class taught by defendant. Prior to enrolling in the Lineman Program, plaintiff met with Roger Larkin at the climbing course and viewed a climbing class in session.

¶ 4     On April 9, 2007, plaintiff signed a document titled "INDEMNIFICATION AND RELEASE OF LIABILITY," which provided in relevant part as follows:

"NOW THEREFORE, for the consideration of participating in the coursework/programs offered by the Association of Illinois Electric Cooperatives through the Lincoln Land Community College, the receipt of which is hereby acknowledged, I, the undersigned, hereby RELEASE, RELINQUISH, INDEMNIFIY [*sic*], AND HOLD HARMLESS the Association of Illinois Electric Cooperatives, its directors, officers, employees, and agents from any and all claims arising from my participation in the

-2-

courses/programs offered by the Association of Illinois Electric Cooperatives."

The record is not clear whether April 9, 2007, was plaintiff's first day of classes for the Lineman Program or the first day for the climbing class.

¶ 5    Plaintiff concedes she did not read the release. The parties dispute whether Larkin, her instructor, explained the release and the possibility of injury. Plaintiff concedes she understood, at the time she signed the release, there was a risk of injury as a result of climbing poles. According to plaintiff, she did not know the particular activities she would be requested to perform in the climbing class or that she would be required to perform some activities without a fall restraint device.

¶ 6    On October 16, 2007, plaintiff performed a "teardown" on one of the poles on the climbing course as a part of the climbing class. As plaintiff descended the pole, she became tired and stopped to rest. Once plaintiff attempted to continue her descent, she lost her footing and fell to the ground, suffering injury to her right knee.

¶ 7    In October 2009, plaintiff sued defendant for her injuries. In September 2010, defendant filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2010)). In November 2010, plaintiff filed a second amended complaint. Count I of the complaint alleged a claim of negligence against defendant, alleging defendant provided her with a damaged pole that was unsafe to climb, failed to provide her with safety equipment, and failed to remove her from the pole upon realizing she was fatigued. Count II of the complaint alleged defendant engaged in willful and wanton conduct in that it failed to institute procedures to ensure its poles were safe to climb and failed to exercise ordinary care despite the knowledge students were in imminent danger of injury. In December 2010, defendant asserted affirmative defenses based on the April 2007 release and contributory negligence.

¶ 8    In February 2011, the circuit court held a hearing on defendant's motion for summary judgment. The court's February 4, 2011, written order states, "The Court finds the bargaining positions of the parties militates against enforcement of the Exculpatory Release signed by Plaintiff on 4/9/07 and therefore Plaintiff's Motion to Strike the First Affirmative Defense is granted." The record does not contain plaintiff's motion to strike. Further, the court found the case presented factual issues as to whether defendant's conduct was willful and wanton.

¶ 9    In March 2011, defendant filed a motion to certify a question of law pursuant to Rule 308. In March 2012, the circuit court made a written finding under Rule 308(a) that its February 2011 order involved a question of law as to which there are substantial grounds for difference of opinion and an immediate appeal from that order may materially advance the ultimate termination of the litigation.

¶ 10                                    II. ANALYSIS
¶ 11                              A. The Certified Question
¶ 12    The circuit court certified the following question pursuant to Illinois Supreme Court Rule 308(a) (eff. Feb. 26, 2010):

        "Does the fact that the Plaintiff was a student at Lincoln Land Community College

-3-

and the Defendant was the Association of Illinois Electric Cooperatives providing instructional services to community college students in climbing utility poles create an uneven bargaining position thereby militating against the enforcement of the exculpatory release at issue when the economic positions of the parties as well as all other undisputed facts concerning the timing and manner in which such release was presented to Plaintiff by Defendant are taken into consideration?"

¶ 13                                    B. Standard of Review

¶ 14    Supreme Court Rule 308(a) provides in relevant part:

"When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved." Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010).

¶ 15    The scope of review in an interlocutory appeal brought under Rule 308 is limited to the certified question. *Long v. Elborno*, 397 Ill. App. 3d 982, 988, 922 N.E.2d 555, 560 (2010). A reviewing court should only answer a certified question if it asks a question of law and decline to answer where the ultimate disposition "will depend on the resolution of a host of factual predicates." *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 469, 693 N.E.2d 358, 364 (1998); *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902, 834 N.E.2d 952, 957 (2005). This court refrains from answering a certified question where it calls for a hypothetical answer with no practical effect. *Lawndale Restoration Ltd. Partnership v. Acordia of Illinois, Inc.*, 367 Ill. App. 3d 24, 27, 853 N.E.2d 791, 794 (2006); see also *Giangiulio v. Ingalls Memorial Hospital*, 365 Ill. App. 3d 823, 829, 850 N.E.2d 249, 255 (2006) ("With rare exceptions, we do not expand the question under review to answer other, unasked questions."). A certified question pursuant to Rule 308 is reviewed *de novo*. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57-58, 879 N.E.2d 910, 918 (2007).

¶ 16                                    C. The Parties' Arguments

¶ 17    Defendant contends the circuit court erred in striking its affirmative defense and the April 2007 release is valid. Defendant argues the release is valid because (1) exculpatory agreements are generally enforceable, (2) the case law relied on by plaintiff is not controlling or persuasive, (3) plaintiff understood the risks in climbing the pole, and (4) the release contemplated the injury. Further, defendant asserts, "[t]he contention a person taking a course for self-improvement and economic opportunity creates an unfair bargaining position sufficient to nullify exculpatory agreements is fundamentally untenable."

¶ 18    Plaintiff asserts the certified question requires resolution of factual issues–a point clarified at oral argument–but, upon those facts, the release is invalid because an uneven bargaining position existed between her and defendant. Plaintiff contends an uneven bargaining position existed because (1) she made significant time and financial commitments to pursue an education, (2) her decision to sign the release was "clouded" by the fact she (a) trusted the College and defendant, and (b) believed they were going to provide her with a

-4-

safe, quality education, and (3) refusal would have required her to (a) forgo over $1,100 in equipment costs that defendant required her to bring to the first day of class, (b) forgo employment as an electrical lineman, and (c) have futilely incurred student loans to finance her education and training. Plaintiff asserts she did not fully understand the level of risk of serious bodily harm defendant's release requested her to waive.

¶ 19 Plaintiff asserts this case is similar to *White v. Village of Homewood*, 256 Ill. App. 3d 354, 628 N.E.2d 616 (1993), where the court struck a liability release between a firefighter applicant and a potential employer. Plaintiff argues this case is akin to the plaintiff in *White* because the release placed her at the mercy of defendant's negligence, no matter its magnitude, because (1) she needed an education to pursue a career as an electrical lineman and (2) she was required to sign the release on the first day of classes in order to participate in certain Lineman Program courses and complete the Linemen Program. Defendant responds *White* is not controlling or persuasive because (1) plaintiff "voluntarily chose to pursue education that could *potentially* lead to employment" (emphasis in original), (2) defendant "did not stand in the place of a potential employer," and (3) successful completion of the climbing course did not guarantee employment with defendant or any other employer. Defendant cites to *Johnson v. Salvation Army*, 2011 IL App (1st) 103323, 957 N.E.2d 485, and a series of cases where the court upheld the exculpatory release against the plaintiff.

¶ 20 **D. Does the Certified Question Present a Question of Law?**

¶ 21 Defendant and plaintiff disagree whether the certified question is a pure question of law. The certified question initially appears as if it can be answered as a matter of law, *i.e.*, whether the relationship between a student and an educator creates an uneven bargaining position thereby militating against enforcing the release. Most of defendant's argument is structured around refuting the conclusion such a relationship militates against enforcing the release. At oral argument the parties suggested the word "militate" may have been an inartful choice of words but was chosen to reflect the circuit court's order. We note "militate" is defined as "to have weight or effect" (Webster's New World Dictionary 1433 (3d ed. 1976)) and "[t]o exert a strong influence" (Black's Law Dictionary 1014 (8th ed. 2004)). See also Bryan A. Garner, A Dictionary of Modern Legal Usage 569 (2d ed. 1995) (discussing usage of "militate"). At the same time, the certified question asks whether the relationship between plaintiff and defendant, including "undisputed facts" such as the particular circumstances surrounding the clause's execution and the economic positions of the parties, causes the exculpatory clause to be unenforceable. Our review of the record and the parties' arguments shows the following are undisputed: (1) plaintiff was enrolled in the Lineman Program at the College; (2) defendant provides instructional services, including the pole climbing class, at the College; (3) plaintiff participated in the climbing class taught by defendant; (4) defendant taught the climbing class at a pole climbing course on the College's campus; (5) plaintiff signed, without first reading, a purported liability release on April 9, 2007; (6) at the time she signed the release, plaintiff was aware electrical linemen can fall from poles; (7) plaintiff would not have been permitted to complete the climbing class–which required physically climbing poles–if she did not sign the release; (8) plaintiff would have lost her equipment investments (the actual expenses are disputed); and (9) on October 16, 2007, while

participating in the climbing class, plaintiff fell from a pole to the ground and suffered injury to her right knee.

¶ 22   The circuit court's order provides no illumination to whether its decision was based on a matter of law or the particular circumstances of the case. The basis for plaintiff's motion to strike defendant's affirmative defense is not contained within the record on appeal. To untangle whether the certified question presents a question of law or a question of fact, it is necessary to examine how Illinois courts review the enforceability of exculpatory releases.

¶ 23                              1. *Enforceability of Exculpatory Clauses*

¶ 24   In Illinois, parties may contractually release liability for their own negligence. *Hellweg v. Special Events Management*, 2011 IL App (1st) 103604, ¶ 6, 956 N.E.2d 954; *McKinney v. Castleman*, 2012 IL App (4th) 110098, ¶ 14, 968 N.E.2d 185 (quoting *Johnson*, 2011 IL App (1st) 103323, ¶ 19, 957 N.E.2d 485). Liability release contracts are not favored and are strictly construed against the benefitting party. *Harris v. Walker*, 119 Ill. 2d 542, 548, 519 N.E.2d 917, 919 (1988). An exculpatory clause places two public policy interests at conflict: (1) a person should be liable for his or her negligent conduct, and (2) contracting parties may freely contract about their affairs. *Simmons v. Columbus Venetian Stevens Buildings, Inc.*, 20 Ill. App. 2d 1, 11-12, 155 N.E.2d 372, 377 (1958); *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 412, 869 N.E.2d 195, 201 (2007).

¶ 25   In general, Illinois courts enforce a liability release if (1) the terms of the exculpatory clause are clear, explicit, and precise; (2) the exculpatory clause encompasses the activity, circumstance, or situation contemplated by the parties to relieve the defendant from a duty of care; (3) it is not against settled public policy; and (4) nothing in the "social relationship of the parties militat[es] against upholding the agreement." *Jackson v. First National Bank of Lake Forest*, 415 Ill. 453, 460, 114 N.E.2d 721, 725 (1953); *Chicago Steel Rule & Die Fabricators Co. v. ADT Security Systems, Inc.*, 327 Ill. App. 3d 642, 645, 651, 763 N.E.2d 839, 842, 846-47 (2002); *Evans*, 373 Ill. App. 3d at 414-15, 869 N.E.2d at 203; *Falkner v. Hinckley Parachute Center, Inc.*, 178 Ill. App. 3d 597, 602, 533 N.E.2d 941, 944 (1989). See also *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (1991) ("A release is a contract, and therefore is governed by contract law."); Restatement (Second) of Contracts § 195 (1981) (terms exempting from liability for negligent harm violating public policy); Restatement (Second) of Torts § 496B (1965); *Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 847 n.31 (W.Va. 2010) (collecting cases on preinjury releases); *Tunkl v. Regents of the University of California*, 383 P.2d 441, 444-46 (Cal. 1963) (setting forth six characteristics of the transaction and exculpatory clause that may weigh against enforcement).

¶ 26   Illinois courts have identified categories of social relationships where enforcing an exculpatory clause between the parties would violate public policy as a matter of law, including (1) an employer and employee, and (2) the public and those charged with a duty of public service, such as " 'a common carrier, an innkeeper, a public warehouseman or a public utility.' " *Hamer v. City Segway Tours of Chicago, LLC*, 402 Ill. App. 3d 42, 45-46, 930 N.E.2d 578, 581-82 (2010) (quoting *White*, 256 Ill. App. 3d at 358-59, 628 N.E.2d at

619-20); see also *Simmons*, 20 Ill. App. 2d at 17-33, 155 N.E.2d at 380-87 (discussing in detail four social relationships–employer-employee, common carrier, innkeeper, and bailor-bailee–and the varying rationales for invalidating liability releases in these relationships); Restatement (Second) of Contracts § 195(2)(b) (1981) (same). These categories are not an exhaustive list of the social relationships in which exculpatory clauses are unenforceable, and a liability release may be invalid " 'where there is such a disparity of bargaining power that the agreement does not represent a free choice on the part of the plaintiff.' " *Hamer*, 402 Ill. App. 3d at 45-46, 930 N.E.2d at 581-82 (quoting *White*, 256 Ill. App. 3d at 358-59, 628 N.E.2d at 619-20); see also Restatement (Second) of Torts § 496B cmt. j (1965) ("The basis for such a result is the policy of the law which relieves the party who is at such a disadvantage from harsh, inequitable, and unfair contracts which he is forced to accept by the necessities of his [or her] situation.").

¶ 27    In considering whether an exculpatory release–the contractual relationship–is the result of a disparity of bargaining power between the parties, Illinois courts have noted (1) the sophistication of the contracting parties (*Jackson*, 415 Ill. at 462-63, 114 N.E.2d at 726 (commercial lease); *Reuben H. Donnelley Corp. v. Krasny Supply Co.*, 227 Ill. App. 3d 414, 419-20, 592 N.E.2d 8, 12 (1991) (agreement between restaurant supply wholesaler and advertiser)); (2) whether the plaintiff was or should have been aware of the risks involved in the activity (*Falkner*, 178 Ill. App. 3d at 602-03, 533 N.E.2d at 945 (risk of fatal injury is apparent in parachute jumping); *Maness v. Santa Fe Park Enterprises, Inc.*, 298 Ill. App. 3d 1014, 1021, 700 N.E.2d 194, 199 (1998) (risk of requiring medical attention accompanied auto racing); *Hellweg*, 2011 IL App (1st) 103604, ¶ 7, 956 N.E.2d 954 (risk of injury with another bicyclist was foreseeable)); (3) whether the plaintiff was under economic or other compulsion to agree to the release (*Harris*, 119 Ill. 2d at 550, 519 N.E.2d at 920 (quoting *Schlessman v. Henson*, 83 Ill. 2d 82, 87, 413 N.E.2d 1252, 1254 (1980))) and (4) whether the plaintiff had a reasonable alternative. See also Restatement (Second) of Torts § 496B cmt. j (1965) (uneven bargaining position "may arise [(1)] from the defendant's monopoly of a particular field of service, [(2)] from the generality of use of contract clauses insisting upon assumption of risk by all those engaged in such a field, so that the plaintiff has no alternative possibility of obtaining the service without the clause; or [(3)] it may arise from the exigencies of the needs of the plaintiff himself, which leave him no reasonable alternative to the acceptance of the offered terms").

¶ 28            2. *Liability Releases Between a Student and an Educator*

¶ 29    The parties concede, and our research confirms, no reported Illinois decision has directly considered whether an educator-student relationship factors against enforcing a liability release. A student and her educator may have an enforceable contractual relationship. See *Eisele v. Ayers*, 63 Ill. App. 3d 1039, 1045-46, 381 N.E.2d 21, 27 (1978) (contract between student and a school is not *per se* contract of adhesion); *Raethz v. Aurora University*, 346 Ill. App. 3d 728, 732, 805 N.E.2d 696, 699 (2004) (terms of contractual relationship generally set forth in school catalog).

¶ 30    Our research shows several sister states considering exculpatory clauses between an

educator and a student have held such clauses are categorically void as matter of public policy. See *Wagenblast v. Odessa School District No. 105-157-166J*, 758 P.2d 968, 971-73 (Wash. 1988) (applying the six *Tunkl* characteristics (*Tunkl*, 383 P.2d at 444-46) to find liability release for Washington public school interscholastic sports against public policy); *Kyriazis v. University of West Virginia*, 450 S.E.2d 649, 655 (W. Va. 1997) (because university performs a "public service," it is against public policy to enforce preinjury liability release between student and university). Other state courts have looked at the particular relationship between the educator and student in determining whether to uphold the release. See *Merten v. Nathan*, 321 N.W.2d 173, 178 (Wis. 1982) (deciding case on language of the exculpatory contract between riding student and instructor); *Whittington v. Sowela Technical Institute*, 438 So. 2d 236, 242 (La. Ct. App. 1983) (based on circumstances attending the execution of release before field trip, nursing student was not "upon an equal footing" with school); *Reed v. University of North Dakota*, 1999 ND 25, ¶ 27, 589 N.W.2d 880, 887 (collegiate athlete not under economic compulsion to participate in charity road race that was part of sports team's conditioning program).

¶ 31                                   3. *The Parties' Cited Cases*

¶ 32        Plaintiff contends this case is comparable to *White* where the exculpatory agreement was stricken. In *White*, the plaintiff fell and was injured while participating in an agility test to become a firefighter. *White*, 256 Ill. App. 3d at 355, 628 N.E.2d at 617. The First District found the exculpatory agreement unenforceable because it lacked consideration because the defendants were statutorily required to administer the physical agility test and the plaintiff had a legal right to participate. *White*, 256 Ill. App. 3d at 357, 628 N.E.2d at 618-19. In the alternative, the court concluded the exculpatory agreement was against public policy because the plaintiff was required to sign the exculpatory agreement in order to complete her employment application. *White*, 256 Ill. App. 3d at 359, 628 N.E.2d at 620. The court rejected the defendants' arguments the plaintiff freely chose to apply for the position, she could have applied elsewhere, and the defendants did not have a monopoly on the job market. The court stated "[t]hese arguments ignore the economic compulsion facing those in search of employment. To suppose that plaintiff here had any bargaining power whatsoever defies reality." *White*, 256 Ill. App. 3d at 359, 628 N.E.2d at 620. The court noted the relationship, "as potential employer and job applicant, is akin to the relationship between an employer and employee" and its decision was "merely an extension" of the public policy against exculpatory agreements between an employer and employee. *White*, 256 Ill. App. 3d at 359, 628 N.E.2d at 620.

¶ 33        Defendant asserts this case resembles the contractual relationship represented by *Johnson*, 2011 IL App (1st) 103323, 957 N.E.2d 485. In *Johnson*, 2011 IL App (1st) 103323, ¶ 1, 957 N.E.2d 485, the plaintiff was injured in a car accident while a passenger in a Salvation Army-owned vehicle. The First District rejected the plaintiff's argument his position as a beneficiary in the Salvation Army's adult rehabilitation program was tantamount to an employee-employer relationship. *Johnson*, 2011 IL App (1st) 103323, ¶¶ 20-22, 957 N.E.2d 485. Further, the court rejected the plaintiff's argument a disparity in bargaining positions existed between him and the Salvation Army because as an unemployed

and homeless applicant he had to accept the agreement or be denied food and shelter. *Johnson*, 2011 IL App (1st) 103323, ¶ 24, 957 N.E.2d 485. The court concluded the plaintiff was offered food and shelter as an incidental benefit of the rehabilitation program and could have chosen not to agree to the terms and not entered the program or entered another program. *Johnson*, 2011 IL App (1st) 103323, ¶¶ 24-28, 957 N.E.2d 485. The court rejected the plaintiff's argument *White* controlled, noting the plaintiff was not under the same economic compulsion as the *White* plaintiff because he could have sought rehabilitative services elsewhere. *Johnson*, 2011 IL App (1st) 103323, ¶ 31, 957 N.E.2d 485. It further noted "[i]n *White*, the disparity [of bargaining power] was found between an individual who needed employment and an entity that could provide her with employment, an essential economic necessity." *Johnson*, 2011 IL App (1st) 103323, ¶ 32, 957 N.E.2d 485. See also *McKinney*, 2012 IL App (4th) 110098, 968 N.E.2d 185 (following *Johnson* on similar facts).

¶ 34    Additionally, defendant cites *Hamer*, 402 Ill. App. 3d 42, 930 N.E.2d 578, where the court upheld a liability release between a tour participant, who had been injured while riding a Segway, and the tour operator. There, the court rejected the plaintiff's claim there was a disparity of bargaining power because if she "disagreed with the exculpatory clause, she could simply refuse to join the tour." *Hamer*, 402 Ill. App. 3d at 46, 930 N.E.2d at 582.

¶ 35    4. *The Cited Cases Do Not Resolve the Certified Question as a Matter of Law*

¶ 36    The parties' cited cases are distinguishable. The First District in *White* recognized its conclusion was "merely an extension" of the policy that exculpatory agreements between an employee and employer are void as a matter of public policy. *White*, 256 Ill. App. 3d at 359, 628 N.E.2d at 620. Plaintiff was not an applicant for employment with defendant, nor has she claimed the climbing class is statutorily mandated, as the agility test was in *White*, for her to obtain employment as an electrical lineman. We decline to decide whether an exculpatory clause between a student and an educator represents another extension of this public policy. First, the legislature is in a superior position than the judiciary to determine whether exculpatory agreements between a student and an educator should be categorically void. Second, we cannot determine public policy based on the hardship of an individual case. See *Simmons*, 20 Ill. App. 2d at 33, 155 N.E.2d at 387.

¶ 37    The line of cases relied on by defendant are distinguishable by the voluntary nature of activity engaged in, which is typically a recreational hobby or sport. This court in *McKinney* and the First District in *Johnson* concluded the rehabilitation programs at issue were not employment and the plaintiff "enjoyed the option of rejecting the exculpatory clause by not admitting himself" to the program. *McKinney*, 2012 IL App (4th) 110098, ¶ 18, 968 N.E.2d 185; *Johnson*, 2011 IL App (1st) 103323, ¶ 28, 957 N.E.2d 485 (the plaintiff "could have chosen not to agree to the terms of the program and not to enter into the program"). Underlying those cases is the understanding that if the individual disagrees with the service provider's liability release she can (1) forgo the particular activity or (2) find an alternative service provider, or (3) the parties can adjust the cost of the service to maintain the risk of injury on the provider. See *Hamer*, 402 Ill. App. 3d at 46, 930 N.E.2d at 582 (if plaintiff disagreed with exculpatory clause "she could simply refuse to join the tour"); see also *Mann*

*v. Wetter*, 785 P.2d 1064, 1066-67 (Or. Ct. App. 1990) (diving school did not provide an essential public service and customers had a multitude of alternatives); *Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1202 n.11 (Pa. 2012) (collecting cases on voluntary recreational activities). Plaintiff's claim is different from a claim where she would merely have been denied access if she did not agree to the release. She was engaged in a career training class that is part of an educational curriculum, and made an economic investment in her academic degree prior to being presented with the liability release. Had she declined to sign the release, she would have lost part of this investment–the extent of which we do not know. This prior investment goes to her ability to freely walk away from the liability release.

¶ 38        5. *This Court Cannot Resolve Whether an Unequal Bargaining Position Existed as This Is a Question of Fact*

¶ 39        The analysis to determine whether a liability release is enforceable can be a fact-intensive endeavor involving consideration of a multitude of variables impacting the bargaining position of the parties. As discussed above, to determine whether the plaintiff had a reasonable alternative–*i.e.*, whether the plaintiff could simply walk away–courts look at whether (1) the defendant possessed a monopoly over the service, (2) the plaintiff could obtain the service without the exculpatory clause, and (3) the plaintiff's exigencies left him or her with no reasonable alternative. Whether plaintiff had a reasonable alternative is at issue in this case. Pertinent questions and considerations can aid in the resolution of this difficult inquiry, such as the following: (1) What is the value of plaintiff's investment, measured in both time and money, in her educational degree that could potentially be lost? (2) Could plaintiff resell the equipment to offset her financial investment? (3) Is successful completion of the climbing course a required prerequisite for the Lineman Program? (4) Would forgoing the climbing course negatively impact the marketability of her academic degree in the Lineman Program? (5) Would plaintiff's financial aid, such as student loans, grants, or scholarships, be negatively affected by not taking the course as a result of declining the release? (6) Could plaintiff's financial aid be used for a different academic degree or program? (7) Could plaintiff have enrolled in a different academic degree or program after being presented with the liability release? (8) Could plaintiff independently obtain the same vocational training in her community? (9) Where else could plaintiff obtain this training? (10) Could plaintiff pay an additional fee to maintain defendant's liability and participate in the climbing course? (11) The realities of those facing employment (see *White*, 256 Ill. App. 3d at 359, 628 N.E.2d at 620), such as a shift toward an educated workforce–before employment–that place costs of training on the job seeker, who in turn is requested by a community college to accept the risk of injury to obtain an education necessary for employment. The fact the educator is providing educational services, acting akin to a public service monopoly, is a reason some states have decided this issue categorically. See *Kyriazis*, 450 S.E.2d at 655. These questions and considerations are not an exhaustive list–nor do we imply they should be given greater weight than those not identified–and are provided to assist the trial court in resolving this difficult inquiry.

¶ 40        It is apparent the parties dispute the following: (1) whether and when defendant explained

the release's significance; (2) whether plaintiff knew the full extent of the physical and climbing requirements at the time she signed the release; (3) whether plaintiff knew she would be required to climb down a pole without a fall restraint device; (4) the extent of plaintiff's financial obligation to prepare for the class; and (5) the benefit to plaintiff's employment opportunities as a result of the class. It is not our role to resolve these factual questions. These disputed facts may weigh against whether plaintiff understood the release (see *Mulliken v. Lewis*, 245 Ill. App. 3d 512, 516, 615 N.E.2d 25, 28 (1993) ("[W]hether an exculpatory clause is binding due to the circumstances surrounding its execution is a question of fact for the trier of fact to decide.")) and whether plaintiff stood at an inferior bargaining position.

¶ 41 To resolve whether an uneven bargaining position existed in this case it is necessary to consider a host of factual predicates. Questions about the parties' bargaining positions remain unanswered and disputed and we cannot resolve them as a matter of law. We decline to answer the certified question.

¶ 42                                  6. *Defendant's Affirmative Defense*

¶ 43 Based on the parties' arguments and the circuit court striking the April 2007 release, it appears the court concluded an exculpatory release between a student and an educator is void as a matter of law. Because further development is necessary to resolve the disputed factual issues, the court prematurely struck defendant's affirmative defense, which is subject to reinstatement. Given our role under Rule 308, defendant has the burden to move the trial court for reconsideration of its decision and reinstatement of the affirmative defense.

¶ 44                          E. Plaintiff's Willful and Wanton Claim

¶ 45 Defendant urges us to consider plaintiff's claim its conduct was willful and wanton. Here, the circuit court's finding the case presented a question of material fact on plaintiff's willful and wanton claim was not included in the certified question. That issue is not intertwined with the certified question. See *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 999, 803 N.E.2d 1020, 1026 (2004) ("the propriety of the class [action] certification *** is intertwined with the certified question"). The merit of plaintiff's willful and wanton claim is not before this court, and we will not consider defendant's argument.

¶ 46                                        III. CONCLUSION

¶ 47 We decline to answer the certified question as resolution of the certified question depends upon questions of fact. We remand for further proceedings.

¶ 48 Certified question not answered; cause remanded.